COURT OF CHANCERY
OF THE
STATE OF DELAWARE

ANDRE G. BOUCHARD
CHANCELLOR

Leonard L. Williams Justice Center
500 N. King Street, Suite 11400
Wilmington, Delaware 19801-3734

Date Submitted:  August 1, 2017
Date Decided:  October 25, 2017

P. Bradford deLeeuw, Esquire
Rosenthal, Monhait & Goddess, P.A.
919 North Market Street, Suite 1401
Wilmington, DE 19801

Jon E. Abramczyk, Esquire
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
Wilmington, DE 19801

Anne C. Foster, Esquire
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, DE 19801

Edward B. Micheletti, Esquire
Skadden, Arps, Slate, Meagher & Flom LLP
One Rodney Square
Wilmington, DE 19801

David A. Seal, Esquire
Abrams & Bayliss LLP
20 Montchanin Road, Suite 200
Wilmington, DE 19807

> RE: ***R.A. Feuer v. Philippe P. Dauman, et al.***
> Civil Action No. 12579-CB

Dear Counsel:

This letter constitutes the Court's decision on defendants' motion to dismiss claims for breach of fiduciary duty, waste, and unjust enrichment.  Plaintiff brought these claims derivatively on behalf of Viacom Inc. challenging the company's payment of approximately $13 million of compensation to its founder and then-Chairman Sumner Redstone from July 2014 to May 2016, when Viacom's directors allegedly knew that he was incapacitated and incapable of doing his job.  For the

reasons explained below, the motion is granted and the complaint will be dismissed with prejudice as to the named plaintiff because the claims asserted in the complaint were released as part of a settlement agreement Viacom entered in August 2016.

## I.     Background

The facts recited below are drawn from the Verified Derivative Complaint filed on July 20, 2016, and certain facts of which I may take judicial notice because they are not subject to reasonable dispute.[1]  For the purpose of deciding this motion, I assume the truth of all well-pled facts and draw all reasonable inferences in favor of plaintiff.[2]

### A.     The Parties

Nominal defendant Viacom, Inc. is a Delaware corporation headquartered in New York that owns various global media brands.  Plaintiff alleges he has been a stockholder of Viacom at all relevant times.

Defendant Sumner Redstone served as Viacom's Executive Chairman from January 1, 2006 until February 4, 2016, when he became Chairman Emeritus. Sumner founded Viacom and has been its controlling stockholder since 1986.  He is the settlor of the Sumner M. Redstone National Amusements Trust, which owns 80%

---

[1] D.R.E. 201.

[2] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896-97 (Del. 2002).

of National Amusements, Inc. ("NAI"), which in turns owns (directly and indirectly through certain subsidiaries) 79.5% of Viacom's Class A voting shares. Defendant Shari Redstone is a Viacom director and Sumner's daughter. She controls the remaining 20% of NAI.[3]

The complaint names as defendants nine other individuals in addition to Sumner and Shari who were members of the Viacom board at the times relevant to the allegations in the complaint: George S. Abrams, Philippe P. Dauman, Thomas E. Dooley, Blythe J. McGarvie, Deborah Norville, Charles E. Phillips, Jr., Frederic V. Salerno, William Schwartz, and Christiana Falcone Sorrell. Dauman had been Viacom's President and Chief Executive Officer since September 2006. He and Abrams also were directors of NAI until May 20, 2016.

**B.      Compensation Paid to Sumner from 2014 to 2016**

During the times relevant to this action, Sumner was party to an employment agreement with Viacom dated December 29, 2005, which was amended on September 26, 2006.[4]   As amended, the employment agreement set his base salary

---

[3] This decision refers to Sumner Redstone and Shari Redstone by their first names for clarity. No disrespect is intended.

[4] Cumings Aff. Ex. C:  Employment Agreement with Sumner M. Redstone, Dec. 29, 2005, §§ 2(a), (c); Ex. D:  Amendment to Employment Agreement with Sumner M. Redstone, Sept. 26, 2006, § 1 (Dkt. 23).

at $1 million per year and entitled him to receive bonus compensation. The employment agreement could be terminated at will by either party.[5]  Effective January 1, 2014, Sumner's base salary was increased to $2 million.

In May 2014, Sumner turned 91.  He was hospitalized several times that year for pneumonia and, according to a lawsuit filed against him by a former caretaker, suffered brain damage that "severely compromised Sumner's ability to swallow and to articulate speech."[6]  Beginning in July 2014, Sumner allegedly ceased providing any services of value to Viacom.  Sumner was physically absent from a series of board meetings through the summer and fall of 2014, by which point the directors allegedly knew about his incapacitation.  Viacom paid Sumner $13.2 million in total compensation for the 2014 fiscal year, which ended on September 30, 2014, including approximately $2 million in salary and a $10 million bonus.[7]

In 2015, Sumner did not participate in any conference calls with analysts and did not physically attend any Viacom board meetings or the annual stockholder meeting. According to sources quoted in a May 31, 2015 *Vanity Fair* article entitled

---

[5] Cumings Aff. Ex. C:  Employment Agreement with Sumner M. Redstone, Dec. 29, 2005, § 9 (Dkt. 23).

[6] Compl. ¶ 28.

[7] The remaining $1.2 million mostly was attributable to a change in the value of Sumner's pension.  *See* Cumings Aff. Ex. E:  Viacom Proxy Statement, Jan. 23, 2015, at 39 (Dkt. 23).

*Who Controls Sumner Redstone?*, "Sumner (a) cannot speak and (b) hasn't had a meal since Labor Day other than tubes."[8]  The article quoted an individual who allegedly told one of Sumner's closest friends that Sumner "looks like he's dead," to which the friend replied:  "Well, you should see him in person—he looks even worse."[9]   Viacom paid Sumner $2 million in salary for the 2015 fiscal year but eliminated his cash bonus.

In February 2016, with rumors circulating regarding his condition, Sumner resigned as Viacom's Chairman and was designated Chairman Emeritus. Nevertheless, on March 14, 2016, Sumner was reelected as a director after the rest of the board recommended his reelection to the stockholders.  Sumner continued to receive a salary until May 2016, when payments to him were stopped without public explanation.   According to Viacom's public filings, Sumner received $1.3 million in salary during the 2016 fiscal year.[10]

### C.	Turmoil in the Viacom Boardroom Leads to a Settlement

On May 20, 2016, Dauman and Abrams were notified that Sumner purportedly had removed them as trustees of his trust, as directors of NAI, and as

---

[8] Compl. ¶ 47.

[9] Compl. ¶ 48.

[10] *See* Cumings Aff. Ex. M:  Viacom Proxy Statement, Dec. 16, 2016, at 23 (Dkt.  23).

managers of NAI's subsidiaries. These actions prompted Dauman and Abrams to file a lawsuit in Massachusetts seeking to be reinstated to their positions, and prompted Sumner to file a lawsuit in California affirming their removals. In their Massachusetts complaint, Dauman and Abrams alleged that Sumner "suffers from profound physical and mental illness" and that he is afflicted with a "subcortical neurological disorder."[11]

On June 16, 2016, NAI issued a written consent purporting to amend Viacom's by-laws to permit vacancies on its board to be filled by Viacom's stockholders, to remove five of the defendants (Dauman, Abrams, McGarvie, Schwartz, and Salerno) from the Viacom board, and to fill the resulting vacancies with new directors. That same day, two lawsuits were filed in this Court under 8 *Del. C.* § 225 seeking to determine the proper composition of Viacom's board in light of the written consent submitted by NAI. In one action (C.A. No. 12472-CB), NAI sought a declaration that the consent was valid. In the other action (C.A. No. 12473-CB), Salerno accused Shari of exercising undue influence over Sumner and sought to invalidate the consent. On June 24, 2016, these two actions were consolidated (hereafter, the "225 Action").

---

[11] Compl. ¶ 79.

On August 18, 2016, the 225 Action, the Massachusetts action, and the California action were settled pursuant to a Confidential Settlement and Release Agreement (the "Settlement Agreement") that was signed by each of the individual defendants in this action individually and in their capacity as directors of Viacom.[12] The Settlement Agreement contains a general release of Viacom's claims against its directors (the "Release") up to its Effective Date, which is defined in the agreement's preamble as August 18, 2016:

> Each of **Viacom**, its subsidiaries, affiliates under its control, predecessors, successors and assigns, and the current and former directors, officers, employees, agents, attorneys and representatives of each of them (collectively the "Viacom Parties"), **hereby releases and forever discharges from all liability . . . [Sumner and Sheri Redstone], . . . Dauman, Abrams, Salerno, McGarvie, Schwartz, Phillips, Sorrell, Norville, Dooley**, and the agents, attorneys, representatives, heirs, executors and assigns of each of them . . . **from any and all Claims (defined below) which such Viacom Party ever had, now has or hereafter can, shall or may have, for, upon or by reason of any matter, cause or thing whatsoever from the beginning of the world to the Effective Date of this Settlement**, including, but not limited to, any and all Claims arising out of or relating to conduct alleged in, or the claims asserted in or that could have been asserted in, the Massachusetts Action, the California Action, or the Delaware Actions.[13]

---

[12] *See* Cumings Aff. Ex. N: Form 8-K, Aug. 23, 2016, Ex. 10 (Dkt. 23).

[13] *Id.* § 7(a) (emphasis added).

7

## II.     Procedural History and the Parties' Contentions

On July 20, 2016, after obtaining documents from Viacom in response to a demand to inspect books and records under 8 *Del. C.* § 220, plaintiff filed this action asserting two claims derivatively on behalf of Viacom.  Count I asserts a claim for breach of fiduciary duty and waste of corporate assets against all the individual defendants except Sumner for "approving excessive compensation packages to him in 2014 and 2015, when they knew that he had provided no services of value to the Company after July 2014, at the latest."[14]  Count II asserts that Sumner was unjustly enriched by receiving this compensation.

On October 20, 2016, each of the defendants moved to dismiss the complaint under Court of Chancery Rules 12(b)(6) and 23.1 for failure to state a claim for relief and to plead demand futility.  Addressing the merits, defendants emphasize that the lion's share of the challenged compensation came in the form of a $10 million bonus that was paid to Sumner for Viacom's 2014 fiscal year, which ended September 30, 2014, and that plaintiff does not allege that Sumner failed to perform services during most of that fiscal year.  As to the payments made for fiscal years 2015 and 2016, which totaled approximately $3.3 million, defendants assert that Sumner's

---

[14] Compl. ¶ 100.

"continued retention was deemed appropriate in light of his historical role as Viacom's founder and for his many years of prior service."[15]

On July 18, 2017, after a protracted briefing schedule, a hearing was held on defendants' motion to dismiss. Supplemental submissions were provided thereafter, on July 25 and August 1, 2017.

## III. Analysis

The standards governing a motion to dismiss for failure to state a claim for relief are well settled:

> (i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are "well-pleaded" if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and (iv) dismissal is inappropriate unless the "plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof."[16]

Among the arguments defendants have asserted in support of dismissal is that the claims in the complaint, both of which are asserted derivatively on behalf of Viacom, fail to state a claim for relief because Viacom released them in the Settlement Agreement. This argument presents a threshold issue regarding the viability of plaintiff's claims that is dispositive of the present motion.

---

[15] Individual Defs.' Opening Br. 3 (Dkt. 23).

[16] *Savor,* 812 A.2d at 896-97.

The plain language of the Release in the Settlement Agreement quoted above unambiguously provides that Viacom released each of the individual defendants "from any and all Claims" it had "by reason of any matter, cause or thing" arising up to the "Effective Date" of the Settlement Agreement, which is defined to be August 18, 2016.[17]  The Settlement Agreement defines "Claims" to include "any claim based on . . . breach of fiduciary duty, . . . incapacity, . . . unjust enrichment or other legal duty."[18]  Thus, the literal terms of the Release plainly encompass and bar litigation of the fiduciary duty and unjust enrichment claims asserted in the complaint here, since those claims both arise entirely from compensation decisions that directors of Viacom allegedly made before August 18, 2016.  Indeed, plaintiff effectively conceded that this expansive language would bar his claims if the Release is valid.[19]

In his brief, plaintiff devoted a single paragraph to address the Release, making two points.  First, plaintiff contends that the release is ineffective "because

---

[17] Cumings Aff. Ex. N:  Form 8-K, Aug. 23, 2016, Ex. 10 at 1 (Dkt. 23).

[18] *Id.* § 7(d).

[19] July 18, 2017 Hearing Tr. at 69 (acknowledging that it "looks like" plaintiff's claims would be "released if the release was valid") (Dkt. 48); Pl.'s Aug. 1, 2017 Letter at 1 (conceding that "the release in Section 7(a) of the Agreement is extremely broad and appears nominally to cover a claim of unjust enrichment" against Sumner) (Dkt. 47).

corporate fiduciaries cannot contract away or limit their fiduciary duties."[20]   In support of this argument, plaintiff cites *Paramount Communications, Inc. v. QVC Network Inc.*[21]  This citation is inapposite.  In *QVC*, our Supreme Court found that a no-shop provision in a merger agreement "could not validly define or limit the fiduciary duties" of a target corporation's directors in a sale of control of the corporation, reasoning that "[t]o the extent that a contract, or a provision thereof, purports to require a board to act or not act in such a fashion as to limit the exercise of fiduciary duties, it is invalid and unenforceable."[22]  Here, the Release does not purport to limit prospectively any exercise of fiduciary duty owed by Viacom's directors.  Rather, by its terms, the Release extinguishes potential liability arising from prior acts.

Second, plaintiff asserts that the release is "clearly a self-interested transaction."[23]  This may well be true, but no claim has been asserted challenging the validity of the Settlement Agreement or the enforceability of the Release.[24]  More

---

[20] Pl.'s Answering Br. 34.

[21] 637 A.2d 34 (Del. 1993).

[22] *Id*. at 51.

[23] Pl.'s Answering Br. 34.

[24] *Cf. In re Riverstone Nat'l Inc. Stockholder Litig.,* 2016 WL 4045411, at *1 (Del. Ch. July 28, 2016) (holding that entire fairness is the appropriate standard of review for a challenge to a merger where the acquiror waived in the merger agreement the right to pursue a corporate opportunity claim pre-dating the merger against the target board).

specifically, when confronted with a defense based on the terms of the Release, plaintiff made no effort to amend his complaint to assert a claim challenging the enforceability of the Release or to allege facts concerning the circumstances under which it was entered so as to provide a record from which the Court could second-guess its enforceability. To the contrary, as plaintiff acknowledged in his brief with admirable candor, "insufficient facts have been put before the Court concerning the circumstances under which [the Release] was negotiated and executed to assess its validity."[25]

"Should a plaintiff become aware that the allegations set forth in his complaint are inadequate to support his claim, he should request leave of the Court to amend his complaint rather than attempt to expand its scope through briefing."[26] Here, defendants raised the Release as a basis for dismissal of plaintiff's claims in their opening brief on May 1, 2017—more than eight months after Viacom publicly disclosed the Settlement Agreement in a Form 8-K.[27] Yet plaintiff elected not to seek leave in accordance with Court of Chancery Rule 15(aaa) to amend his

---

[25] Pl.'s Answering Br. 34.

[26] *Orman v. Cullman*, 794 A.2d 5, 28 n.59 (Del. Ch. 2002) (citing Court of Chancery Rule 15(aaa)).

[27] Cumings Aff. Ex. N: Form 8-K, Aug. 23, 2016, Ex. 10 (Dkt. 23).

complaint to address the circumstances surrounding entry of the Release and instead proceeded to file his answering brief based on a stale, incomplete pleading.

Plaintiff's approach here stands in contrast to the approach another Viacom stockholder took in a separate action in this Court (C.A. No. 12545-CB) asserting putative class claims for breach of fiduciary duty against Viacom's directors concerning their response to Sumner's decline in health. In that case, the plaintiffs amended their complaint within two months of the Settlement Agreement, asserting, among other things, that defendants had breached their fiduciary duties by approving the Settlement Agreement.[28]

"Delaware courts recognize the validity of general releases."[29] Given plaintiff's failure to provide a factual basis for the Court to set aside the terms of the Release in the Settlement Agreement, the plain terms of which bar litigation of the derivative claims asserted in this case, the Court has no basis upon which to ignore

---

[28] Am. Compl., *In re Viacom Class B S'holder Litig.*, No 12545-CB, ¶ 162 (Del. Ch. Nov. 10, 2016) (Dkt. 76). Plaintiffs voluntarily dismissed their claims in this action after oral argument was heard on defendants' motions to dismiss. (Dkt. 121 & 125).

[29] *Deuley v. DynCorp. Int'l, Inc.*, 8 A.3d 1156, 1163 (Del. 2010); *see also Chakov v. Outboard Marine Corp.*, 429 A.2d 984, 985 (Del. 1981) (same); *Hob Tea Room, Inc. v. Miller*, 89 A.2d 851, 856 (Del. 1952) (same); *H-M Wexford LLC v. Encorp., Inc.*, 832 A.2d 129, 149 (Del. Ch. 2003) ("[I]t is more or less universally the case that when a corporation pays value to settle a claim, it demands and receives releases in favor of its directors, officers and other agents, in order to preclude the possibility of having to defend against any additional claims arising out of the matter at issue in the settlement.").

the terms of a presumptively valid release of claims and thus must dismiss the complaint. This dismissal is with prejudice as to the named plaintiff only. Nothing in this decision, which expresses no opinion on the issue of demand futility or on any matter other than the facial application of the Release to the two claims asserted in the complaint, is intended to have preclusive effect on any other stockholder of Viacom.

## IV.   Conclusion

For the reasons explained above, the complaint is dismissed with prejudice as to the named plaintiff only.

**IT IS SO ORDERED.**

Sincerely,

*/s/ Andre G. Bouchard*

Chancellor

AGB/gm

14