# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

GERONIMO MUSIC, LLC,     )
                   )
     Plaintiff,       )
                   )
     v.             )   C.A. No. N20C-02-166 MMJ
                   )
FRANK COPSIDAS, JR.,     )
                   )
     Defendant.    )

Submitted: February 15, 2021
Decided: April 22, 2021

On Defendant's Motion to Dismiss
**GRANTED**

Request for Sanctions
**DENIED**

## OPINION

Randall J. Teti, Esq. (Argued), Philip Trainer, Jr., Esq., Ashby & Geddes, Wilmington, Delaware, *Attorneys for Plaintiff Geronimo Music, LLC.*

Thomas E. Hanson, Jr., Esq. (Argued), Barnes & Thornburg LLP, Wilmington, Delaware, *Attorney for Defendant Frank Copsidas, Jr.*

**JOHNSTON, J.**

# FACTUAL AND PROCEDURAL CONTEXT

## *Parties*

This case considers the legacy of the Godfather of Soul—Mr. James Brown. James Brown devised all but his personal and household effects to the James Brown 2000 Irrevocable Trust (the "Trust"). Plaintiff Geronimo Music, LLC ("Geronimo" or the "Company") managed the Trust. Defendant Frank Copsidas, Jr. ("Copsidas") managed Geronimo.

The Trust is not a party to this suit. However, the Trust: (1) has held a majority interest in the Company at all relevant times; (2) brought the suit which led to the Settlement Agreement; and (3) is a party to the Settlement Agreement. The Trust currently owns 100% of the Company.[1]

## *Copsidas' Management of Geronimo*

Copsidas was the manager of Geronimo from the time it was formed in 2002 until his resignation on May 24, 2019.[2] During his time as manager, Copsidas controlled the Company's "operations, assets, funds, profits, books, and records."[3] Copsidas' use of his authority as manager forms the basis of the present lawsuit, as well as the prior suit in the Court of Chancery.

---

[1] Compl. ¶ 5.
[2] *Id.* ¶ 6.
[3] *Id.* ¶ 7.

### *The Chancery Suit and Settlement Agreement*

On July 27, 2018, the Trust, individually and derivatively on behalf of Geronimo, brought suit in the Court of Chancery.[4]  The Trust alleged that Copsidas had abused his authority as manager of Geronimo by: (1) causing Geronimo to dispute the Trust's membership interest in the Company; (2) denying the validity of an assignment that transferred to the Trust all Geronimo shares owned by a third party; (3) utilizing Geronimo funds to pay for Copsidas' own self-interested arrangements; (4) spending Geronimo funds for his personal benefit; and (5) hiring attorneys to advance his own interests and establish a majority ownership in Geronimo for himself.[5]  Based on these alleged actions, the Trust asserted claims against Copsidas, and additional defendants, for: (1) declaratory relief; (2) breach of fiduciary duty; and (3) accounting.

All of the parties to the Chancery suit entered into a Settlement Agreement on May 24, 2019.[6]  In this agreement, among other things, Copsidas agreed to transfer all of his interest in the Company, and any rights he had in Company assets, to the Trust.[7]  Copsidas also agreed to resign from his position as manager on the Effective Date of the Settlement Agreement.[8]  Two provisions of the

---

[4] *Id.* ¶ 10.
[5] Chancery Compl. ¶ 59.
[6] Compl. ¶ 12.
[7] Settlement Agreement §§ 1(a), 1(c).
[8] *Id.* § 1(b).

Settlement Agreement are at issue in this case: (1) a General Release of claims by Geronimo; and (2) an Indemnification Provision.

## *Procedural History*

On December 2, 2019, the Internal Revenue Service ("IRS") notified Geronimo that the Company owed $27,537.05 for unpaid taxes and interest.[9] The IRS placed a lien on the Company's assets to secure payment of the taxes and penalties.[10] Geronimo alleges that this amount must be paid by Copsidas under the terms of the Settlement Agreement.

Geronimo filed suit against Copsidas in this Court on February 19, 2020. The Complaint contains only one count and seeks to enforce the Indemnification Provision found in the Settlement Agreement. On November 11, 2020, Copsidas filed the Motion to Dismiss at issue in this Opinion.

## STANDARD OF REVIEW

### *Failure to State a Claim Upon Which Relief Can be Granted*

In a Rule 12(b)(6) Motion to Dismiss, the Court must determine whether the claimant "may recover under any reasonably conceivable set of circumstances susceptible of proof."[11] The Court must accept as true all well-pleaded

---

[9] Compl. ¶ 17.
[10] *Id.* ¶ 16.
[11] *Spence v. Funk*, 396 A.2d 967, 968 (Del. 1978).

4

allegations.[12] Every reasonable factual inference will be drawn in the non-moving party's favor.[13] If the claimant may recover under that standard of review, the Court must deny the Motion to Dismiss.[14]

## ANALYSIS

### *Defendant's Contentions*

Copsidas argues that this action must be dismissed because the tax-based claim arises out of his management of the Company and thus falls squarely under the General Release. Geronimo asserts in the Complaint that failing to pay taxes is an "improper use of the Company's assets." Copsidas argues in response that "funds" used to pay taxes are separate from the "assets" described in the Indemnification Provision. Copsidas posits that the Indemnification Provision was only meant to cover misuse of assets related to the James Brown materials. If Geronimo meant for the term "assets" to include "funds," the Settlement Agreement would have explicitly stated that intention. Copsidas further argues that he is entitled to sanctions because Geronimo's filing of a baseless claim amounts to bad faith.

### *Plaintiff's Contentions*

Geronimo argues in response that this suit was brought in good faith and

---

[12] *Id.*
[13] *Doe v. Cahill*, 884 A.2d 451, 458 (Del. 2005).
[14] *Spence*, 396 A.2d at 968.

5

may proceed because the Indemnification Provision is an exception to the General Release. Geronimo contends that a reasonable person would have understood that "funds" are included in a company's "assets." Finally, Geronimo asserts that the Indemnification Provision applies to the taxes sought by the IRS because Copsidas' failure to timely pay the taxes amounts to an "improper use of the Company's assets."

### *Contract Interpretation*

Delaware law provides well-settled guidance on interpreting contracts. Contract interpretation includes questions of that law that are generally appropriate for a motion to dismiss analysis.[15] Contracts must be construed as a whole.[16] A court must give contractual language its ordinary and usual meaning.[17] "A contract is ambiguous only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings."[18] Extrinsic evidence will only be considered if the contractual terms are ambiguous.[19]

---

[15] *Coyne v. Fusion Healthworks, LLC*, 2019 WL 1952990, at *5 (Del. Ch.).
[16] *Northwestern Nat. Ins. Co. v. Esmark, Inc.*, 672 A.2d 41, 43 (Del. 1996).
[17] *Id.*
[18] *Rhone-Poulenc Basic Chemicals Co. v. American Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del. 1992).
[19] *Eagle Industries, Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997).

### *General Release*

The Settlement Agreement includes the following General Release of Claims

by Geronimo:

> **The Company** (along with, and without limitation, its agents, representatives, employees, managers, members, affiliates, and all other related parties) **agrees to irrevocably and unconditionally release any and all of its claims,** whether known or unknown, **against** the Trust, the Bobbit Estate, Dallas, Ransom Notes, **Copsidas**, and the Intrigue Entities (along with, and without limitation, their respective representatives, beneficiaries, employees, officers, managers, agents, members, shareholders, subsidiaries, affiliates, and all other related parties) **arising out of the Parties' respective ownership, membership, management, accountings, audits or operation of the Company and/or its assets, including, without limitation, any claims, contractual or otherwise, relating to the management, ownership, publishing, administration, copyright, and/or exploitation rights to the master recordings of James Brown songs or other James Brown materials, whether now known or asserted in the future**, except that the Company does not release any claim relating to its rights to enforce this Agreement ("The Company's Released Claims").[20]

Under Delaware law, general releases are recognized as valid.[21] "A clear

and unambiguous release 'will [only] be set aside where there is fraud, duress,

coercion, or mutual mistake concerning the existence of a party's injuries.'"[22]

General releases are "intended to cover everything—what the parties presently

---

[20] Settlement Agreement § 2(ii) (emphasis added).
[21] *Deuly v. DynCorp Int'l, Inc.*, 8 A.3d 1156, 1163 (Del. 2010), *cert denied*, 563 U.S. 938 (2011).
[22] *Id.* (quoting *Parlin v. Dyncorp Intern. Inc.*, 2009 WL 3636756, at *4 (Del. Super.)) (alteration in original).

have in mind, as well as what they do not have in mind. . . ."[23] The difference between a "general release" and a "specific release" is that a general release does not specifically identify each and every obligation that it extinguishes.[24] When interpreting a release, "the intent of the parties as to its scope and effect are controlling, and the court will attempt to ascertain their intent from the overall language of the document."[25]

In this case, the language contained in the General Release is very broad. The provision expressly includes the management and operation of Geronimo and/or its assets. The parties clearly intended for the General Release to cover a wide array of claims that could arise from Copsidas' management. The Court finds that the General Release is valid and will be given force.

### *Indemnification Provision*

Geronimo argues that its claim is not barred by the General Release because it falls under the following Indemnification Provision:

> **Copsidas hereby agrees to indemnify** and hold harmless the Trust and **the Company** from and **against any and all liability, losses, costs, claims, damages, or expenses asserted by a third party against the Trust and/or the Company for Copsidas' alleged improper use of the Company's assets prior to the Effective Date**, including the alleged improper use of any management, ownership, publishing,

---

[23] *Corp. Prop. Assocs. 6 v. Hallwood Group Inc.*, 817 A.2d 777, 779 (Del. 2003) (quoting *Hob Tea Room v. Miller*, 89 A.2d 851, 856 (Del. 1952)).
[24] *Singh v. Professional Underwriters Liab. Ins. Co.*, 2010 WL 3708181, at *2 (Del. Super.).
[25] *Id.*

administration, copyright, and/or exploitation rights to the master recordings of James Brown songs or other James Brown materials.[26]

At issue in this case is whether the term "assets," as used in this Indemnification Provision, includes Geronimo's funds. As a practical matter, it is always best for parties to explicitly define the terms used in a contract so that there can be no confusion as to what each word means. The term "assets" is not defined in the Settlement Agreement. Therefore, as an initial matter, the Court must decide whether "assets" reasonably can be interpreted multiple ways or if there is only one reasonable interpretation. "The true test is not what the parties to the contract intended [the term] to mean, but what a reasonable person *in the position of the parties* would have thought [the term] meant."[27] Therefore, the Court will consider the case in Chancery leading to the formation of the Settlement Agreement.

Throughout the Chancery Complaint the terms "assets" and "funds" were used to distinguish between money and other Company assets. For example, the Prayer for Relief in the Chancery Complaint asks the Court, among other things, to grant "[d]isgorgement and repayment to the Company by Copsidas of all assets, funds, profits, and amounts determined to have been wrongfully diverted by

---

[26] Settlement Agreement § 1(i) (emphasis added).
[27] *Rhone-Poulenc,* 616 A.2d at 1196 (emphasis added).

9

Copsidas from Geronimo. . . and any master recording rights obtained using Company funds and retained by Copsidas."

The repeated use of "funds" and "assets" separately in the Chancery Complaint informs how the parties understood the Settlement Agreement. The term "funds" only appears once in the Settlement Agreement.[28] Throughout the rest of the agreement, the provisions refer to "Company assets, including the management, ownership, publishing, administration, copyright, and/or exploitation rights to the master recordings of various James Brown songs and other James Brown materials."[29] The Court notes that almost every mention of "assets" in the Settlement Agreement is expressly connected to the rights to James Brown materials.[30]

Geronimo argues that "assets" must be given the plain-language meaning. "Assets" is defined generally as "the entire property of a person, association, corporation, or estate applicable or subject to the payment of debts"[31] and "may be fixed, current, liquid, or intangible."[32] Therefore, Geronimo argues, "funds" are part of a company's "assets." Geronimo asserts that the clause discussing James

---

[28] Settlement Agreement § 1(a) ("[N]o Party other than the Trust shall hold any rights . . . in or related to the Company, its profits, property, **funds**, accounts, cash balances, **and/or assets**.") (emphasis added).
[29] *Id.* at p. 1.
[30] *See id.* §§ 1(c), 1(h), 1(i), 2(ii), 2(iii), 2(iv), 2(v), 5(ix).
[31] *Assets*, https://www.merriam-webster.com/dictionary/assets.
[32] *Assets*, https://www.dictionary.com/browse/assets.

Brown materials does not function to exclude all other assets that are not explicitly mentioned.

In opposition, Copsidas advances an interpretation that considers the context in which the Settlement Agreement was created. Copsidas argues that there is a meaningful difference between "funds" and "assets." That the Chancery Complaint repeatedly refers to "funds" and "assets" separately supports the assertion that the parties understood the terms to mean different things. Copsidas' interpretation is further supported by the one explicit reference to "funds" in the Settlement Agreement and the fact that the term "assets" more often than not immediately precedes a reference to James Brown material.

The Court finds that the Release and Indemnification provisions are not ambiguous. "Funds" and "assets" are separate terms. The plain meaning of "funds" is money. In common parlance, the term "assets" could include both money and other property or resources or capital. However, in the context of the Indemnification Provision, "assets" clearly refers to the master recordings of James Brown songs and other James Brown materials.

The Court further finds that the Indemnification Provision specifically was intended as a carve-out exception to the General Release. The General Release would be meaningless if any debt or other financial obligation would be subject to

11

indemnification. The Release and Indemnification provisions must be interpreted reasonably and consistent with the parties' intent as apparent in the agreement.

The timely filing of tax returns is inherently part of the management of a company. Therefore, Copsidas' actions as alleged in the Complaint are covered by the broad General Release. At most, the failure to timely file taxes could constitute a breach of Copsidas' management and operational duties. It would be an unwarranted stretch to equate the failure to timely file taxes with mismanagement of Company "assets."

The Court finds that Geronimo has failed to state a claim for entitlement to indemnification pursuant to the Settlement Agreement. Therefore, Copsidas' Motion to Dismiss is hereby GRANTED.

### *Request for Sanctions*

Delaware follows the "American Rule" when deciding which party should bear the cost of litigation. In general, each party must cover its own attorneys' fees and court costs.[33] However, a party may be entitled to shift the burden of its fees where the other party conducts itself in bad faith.[34] "The bad faith exception is

---

[33] *Montgomery Cellular Holding Co., Inc. v. Dobler*, 880 A.2d 206, 227 (Del. 2005).
[34] *Id.*

applied in 'extraordinary circumstances' as a tool to deter abusive litigation and to protect the integrity of the judicial process."[35]

The Court finds that Geronimo's claim for indemnification does not constitute bad faith conduct justifying fee shifting. Additionally, there are no "extraordinary circumstances" in this case sufficient to impose sanctions. Therefore, Copsidas' Request for Sanctions and Attorneys' Fees is hereby DENIED.

## CONCLUSION

The General Release and Indemnification Provision are unambiguous. Copsidas' failure to timely file taxes is clearly covered by the General Release and not subject to the Indemnification Provision. Filing taxes falls squarely under the management of Geronimo, not the use of its "assets," as the parties intended that term to be interpreted. Therefore, Geronimo has failed to state a claim for relief.

Although Geronimo is ultimately unsuccessful, there is nothing that suggests Geronimo acted in bad faith in bringing its claim. Therefore, fee shifting is not warranted.

---

[35] *Id.*

**THEREFORE,** Defendant's Motion to Dismiss is hereby **GRANTED.**

Defendant's Request for Sanctions is hereby **DENIED.**

**IT IS SO ORDERED.**

_____

The Honorable Mary M. Johnston