**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

|  |  |  |
|---|---|---|
| ROSEANN MARCHAND, as administrator of the Estate of JACK L. MARCHAND II, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | C.A. No. 2017-0586-NAC |
| JOHN W. BARNHILL, JR., GREG BRIDGES, RICHARD DICKSON, PAUL A. EHLERT, JIM E. KRUSE, PAUL W. KRUSE, W.J. RANKIN, HOWARD W. KRUSE, PATRICIA I. RYAN, and DOROTHY MCLEOD MACINERNEY, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| and, | ) ) | |
| BLUE BELL CREAMERIES U.S.A., INC., | ) ) | |
| Nominal Defendant. | ) | |

**MEMORANDUM OPINION**

Date Submitted: October 8, 2025
Date Decided: December 10, 2025

Robert J Kriner, Jr., Scott M. Tucker, Benjamin P. Hodges, CHIMICLES SCHWARTZ KRINER & DONALDSON-SMITH LLP, Wilmington, Delaware; *Counsel for Plaintiff Roseann Marchand as administrator of the Estate of Jack J. Marchand II.*

Rolin P. Bissell, James M. Yoch, Jr., Nicholas J. Rohrer, M. Paige Valeski, Jillian A. Tyson, YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, Delaware; *Counsel for Defendants John W. Barnhill, Jr., Paul A. Ehlert, Howard W. Kruse, Jim E. Kruse, Dorothy McLeod MacInerney, and William J. Rankin.*

Lewis H. Lazarus, Albert J. Carroll, Kristen A. Zeberkiewicz, Barnaby Grzaslewicz, Samuel E. Bashman, MORRIS JAMES LLP. Wilmington, Delaware, David Schertler, Lisa H. Schertler, SCHERTLER ONORATO MEAD & SEARS LLP, Washington DC; *Counsel for Defendant Richard Dickson.*

Lisa M. Zwally, Bryan T. Reed, GREENBERG TRAURIG, LLP, Wilmington, Delaware, C. Mark Stratton, GREENBERG TRAURIG, LLP, Austin, Texas; *Counsel for Defendant Patricia I. Ryan.*

Srinivas M. Raju, Kevin M. Gallagher, Jason J. Rawnsley, Kaitlyn R. Zavatsky, Brendan W. Clark, RICHARDS, LAYTON & FINGER, PA, Wilmington, Delaware, Lawrence Finder, R. MCCONNELL GROUP PLLC, Houston, Texas; *Counsel for Defendant Greg Bridges.*

Srinivas M. Raju, Kevin M. Gallagher, Jason J. Rawnsley, Kaitlyn R. Zavatsky, Brendan W. Clark, RICHARDS, LAYTON & FINGER, PA, Wilmington, Delaware, Chris Flood, Lisa Sternschuss, FLOOD & FLOOD, Houston, Texas; *Counsel for Defendant Paul W. Kruse.*

Bruce E. Jameson, John G. Day, PRICKETT, JONES & ELLIOTT, P.A., Wilmington, Delaware, Hugh C. Connor II, KELLY HART & HALLMAN, LLP, Fort Worth, Texas; *Counsel for Nominal Defendant Blue Bell Creameries, U.S.A., Inc.*

Jon E. Abramczyk, D. McKinley Measley, Lauren K. Neal, Alec F. Hoechel, MORRIS, NICHOLS ARSHT & TUNNELL LLP. Wilmington, Delaware; *Counsel for the Special Litigation Committee.*

**COOK, V.C.**

Roughly five years ago, this Court approved a settlement of a related derivative case. The defendants in this action, including the nominal defendant, were also named defendants in that related action and parties to the settlement. Now, the individual defendants in this action argue the prior release bars the plaintiff's claims here. They filed a motion for judgment on the pleadings on that basis, seeking complete dismissal of this action.

The defendants essentially concede that no one at the time–neither the parties nor the Court–understood or intended the related action release to release the claims here. The settling parties' contemporaneous actions evidence that lack of intent. No one raised, and thus my predecessor did not consider or rule on, whether the prior release would be fair to the nominal defendant in this action. Indeed, no one mentioned any potential effect on this case at all.

This silence has a seemingly straightforward explanation. At the time the related action settled, the board of directors of the nominal defendant in this action had vested the corporation's power over this action, including the authority to settle claims, in a special litigation committee. The individual defendants, as directors, would of course have known of the special litigation committee's establishment and authority, as did the Court. And the defendants acknowledge that the special litigation committee did not execute or approve the prior settlement or otherwise participate in the settlement negotiations. Quite to the contrary, the special litigation committee filed a status update in this action reporting that it was actively investigating the claims here.

After the related proceeding settled, this action continued for over five years without anyone raising the prior release as a defense. The defendants represent that in January of this year they first discovered that the plain text of the settlement they signed five years ago compels dismissal of plaintiff's claims here. The defendants thus filed their motion.

Having considered the arguments, I conclude that, although the plain text of the at-issue settlement may be read in the way defendants assert, questions regarding the legal viability of defendants' interpretation and estoppel prevent granting judgment on the pleadings. Accordingly, and for the reasons discussed herein, the motion for judgment on the pleadings is denied.

## I. BACKGROUND

The atypical circumstances underlying Defendants' Motion for Judgment on the Pleadings ("Motion") warrant an extensive factual discussion. That discussion includes certain facts that may go slightly beyond the pleadings for the purpose of providing context *only*.[1] Of course, when deciding a Rule 12(c) motion the Court only considers the facts alleged in the pleadings and exhibits attached thereto or

---

[1] *See Llamas v. Titus*, 2019 WL 2505374, *3 n.6 (Del. Ch. June 18, 2019) (relying on extrinsic evidence not "to make any factual findings pertinent to the case, but only to provide context"). *See also SI Management L.P. v. Wininger*, 707 A.2d 37, 43 (Del. 1998) ("There may be occasions where it is important for the trial court to consider some undisputed background facts to place the contractual provision in its historical setting without violating [] the principle that extrinsic evidence may be considered only in the presence of contractual ambiguity.").

incorporated by reference therein.[2] Thus, any facts outside the pleadings discussed as background do not impact the Court's decision.

## A. The Parties, Relevant Non-Parties, and the Listeria Outbreak

Plaintiff Roseann Marchand is the administrator of the estate of Jack L. Marchand II, a record stockholder of Nominal Defendant Blue Bell Creameries U.S.A., Inc. ("BB USA").[3] BB USA is a Delaware corporation in the ice cream sector with its principal place of business in Brenham, Texas.[4] BB USA owns over 69% of partnership units in non-party Blue Bell Creameries, L.P. ("BB LP"), the operating subsidiary that runs the ice cream business.[5] BB USA also owns 100% of the common stock of non-party Blue Bell Creameries, Inc. ("BB GP", collectively with BB USA and BB LP, "Company"), BB LP's general partner.[6] Plaintiff has no ownership stake in BB LP or BB GP, and instead brings derivative claims in her capacity as a BB USA stockholder.[7] Defendants were members of BB USA's Board of Directors at the time of the events underlying Plaintiff's claims.[8]

Federal and state agencies regulate the Company as an ice cream manufacturer to ensure food safety.[9] Starting in February 2015, those regulatory

---

[2] *Village Practice Management Company, LLC v. West*, 342 A.3d 295, 313 (Del. 2025).

[3] Dkt. 1 ("Compl.") ¶ 6.

[4] *Id.* ¶¶ 7, 20-25.

[5] *Id.* ¶ 8.

[6] *Id.*

[7] *Id.* ¶¶ 6, 142-50.

[8] *Id.* ¶¶ 9-19

[9] *See id.* ¶¶ 26-39.

3

agencies detected a Listeria outbreak at the Company's three manufacturing plants.[10] As alleged, Defendants' failure to implement sufficient safety controls and oversight, despite their knowledge of contamination risks, allowed the Listeria outbreak to occur.[11] Plaintiff claims that oversight failure constituted a breach of Defendants' fiduciary duties to BB USA.[12] The Listeria outbreak led to a massive product recall, extreme operational upheaval, and a Company-wide liquidity crisis.[13] The liquidity crisis necessitated an emergency private equity investment, on terms that Plaintiff alleges were unfair to other BB USA stockholders.[14] The Listeria crisis also spawned numerous lawsuits, including two in Delaware.[15]

## B. The *Wenske* Action and the *Wenske* Settlement

In the wake of the Listeria outbreak, equity owners filed two derivative actions in this Court.[16] Plaintiff filed this Action in August 2017 alleging Defendants breached their fiduciary duties owed to BB USA.[17] As discussed, Plaintiffs claims are

---

[10] *Id.* ¶¶ 59-68. Investigative authorities determined the Company's ice cream was the source of several Listeria cases, including three that resulted in death. *See id.* ¶¶ 61, 63.

[11] *See id.* ¶¶ 48-58, 94-119.

[12] *Id.* ¶¶ 142-50.

[13] *Id.* ¶¶ 64, 69-71.

[14] *See id.* ¶¶ 73-86.

[15] *See id.* ¶¶ 87-93; *see generally id.*; Dkt 207 ("Dillione Aff."), Ex. A ("*Wenske* Compl.") (complaint in the second Delaware case related to the Listeria outbreak). *See also Nelson v. Emerson*, 2008 WL 1961150, at *2 n.2 (Del. Ch. May 6, 2008) (noting courts can take judicial notice of "documents filed in [] related [] court proceedings" when ruling on a pleading stage motion); *Aequitas Solutions, Inc. v. Anderson*, 2012 WL 2903324, at *7 (Del. Ch. June 25, 2012) (same); *Baca v. Insight Enterprises, Inc.*, 2010 WL 2219715, at *1 (Del. Ch. June 3, 2010) (same).

[16] *See generally* Compl.; *Wenske* Compl.

[17] *See generally* Compl.

based on Defendants' alleged failure to implement sufficient health and safety oversight concerning the Company's ice cream business.[18] Two months later, BB LP unitholders filed a similar lawsuit, ultimately alleging BB GP and its directors[19] breached fiduciary duties imposed by BB LP's limited partnership agreement ("*Wenske* Action").[20] As in this case, the *Wenske* Action's claims were rooted in the alleged failure to implement sufficient health and safety operational oversight.[21] Notably, all the individual defendants here—as well as the nominal defendant, BB USA—were named defendants in the *Wenske* Action.[22]

The *Wenske* Action and this case proceeded simultaneously. In the *Wenske* Action, this Court partially granted a motion to dismiss and thereafter allowed the *Wenske* Plaintiffs to amend their complaint.[23] Thereafter, BB USA's counsel requested a status conference in both actions to discuss "overlapping factual and evidentiary issues in both cases" as well as possible consolidation.[24] After denying a

---

[18] *See id.* ¶¶ 48-58, 94-119.

[19] The individual "Director Defendants" in the *Wenske* Action, who are all also Defendants here, were members of both BB GP's Board of Directors and BB USA's Board of Directors. *Wenske* Compl. ¶¶ 9-22; *see generally* Compl.

[20] *See Wenske* Compl. ¶¶ 58-79. Although the *Wenske* complaint initially alleged breaches of common law fiduciary duties, that claim was later dismissed. *See Wenske v. Blue Bell Creameries, Inc.*, 2018 WL 3337531, at * 9-18 (Del. Ch. July 6, 2018). The *Wenske* Action plaintiffs' relied on a veil piercing theory to allege liability on the part of the individual defendants in that action. *See* Dillione Aff., Ex. B ("*Wenske* Am. Compl.") ¶¶ 88-116.

[21] *See id.* ¶¶ 25-48.

[22] *See generally id.*; Compl.

[23] *See Wenske*, 2018 WL 3337531, at * 9-18; *Wenske* Am. Compl. At that point BB GP formed a special litigation committee to investigate the *Wenske* Action's claims and asked the Court to stay the case. *See* Transaction ID 63311442.

[24] Dkt. 57. That request came the day after the Delaware Supreme Court issued its ruling in this action. *See id.*; *Marchand v. Barnhill*, 212 A.3d 805, 807-09 (Del. 2019).

motion to stay in the *Wenske* Action,[25] the Court held the requested status conference.[26] In preparation for the hearing, the parties submitted a joint status report in which the *Wenske* Plaintiffs argued this action is "an indemnification case."[27] At the status conference, the Court: (1) directed the parties in both actions to coordinate to avoid duplicative discovery; and (2) expressed the view that the *Wenske* Plaintiffs' arguments suggested that "case ought to proceed first to trial."[28]

With discovery ongoing in the *Wenske* Action, the parties to that action successfully mediated their dispute on December 19-20, 2019—accepting "a mediator's proposal providing the basis for . . . settlement."[29] The *Wenske* Action parties, including BB USA, executed and filed a stipulation for a proposed settlement ("*Wenske* Settlement"), with this Court on April 24, 2020.[30] BB LP's limited partners, but not BB USA stockholders, received notice of the proposed *Wenske* Settlement.[31]

---

[25] *See Wenske v. Blue Bell Creameries, Inc.*, 214 A.3d 958 (Del. Ch. Aug. 28, 2019).

[26] *See* Dkt. 77.

[27] Dkt. 75. Specifically, the *Wenske* Action plaintiffs argued "the only [] damages that Marchand could recover on BB USA's behalf from BB USA's directors and officers are indemnification damages resulting from the *Wenske* Plaintiffs' claims against BB USA in the *Wenske* Action." *Id.* at 5.

[28] Dkt. 84 16:24-21:5.

[29] *See* Dillione Aff., Ex. C ("*Wenske* Settlement") at 8. *See also Brex Inc. v. Su*, 2024 WL 2956861, at *1 (Del. Ch. June 12, 2024) (noting the Court can consider "documents integral" to "affirmative defenses" when ruling on a motion for judgment on the pleadings.).

[30] *See generally id.*

[31] *See* Dillione Aff., Ex. D ("Final Judgment") ¶ 1; Tr. 56:9-20, 84:1-86:18 (noting BB USA stockholders did not receive notice of the *Wenske* Settlement or the fact that the *Wenske* Release could purportedly release this Action). Defendants argue that lack of notice is immaterial, because "notice [to BB USA's stockholders] and due process was not required for BBUSA to individually execute a release against claims that are its litigation assets[.]" *Id.* 84:1-86:18 (citing *Feuer v. Dauman*, 2017 WL 4817427, at *1-2, 5 (Del. Ch. Oct. 25, 2017); *In re Primedia, Inc. Stockholders Litigation*, 2015 WL 3401283, at *1-4 (Del. Ch. May 26, 2015)).

6

In July 2020, the Court held a hearing concerning whether to approve the *Wenske* Settlement.[32] At that hearing, no one raised this action or suggested to Vice Chancellor Slights, who was also presiding over this case, that the *Wenske* Release would bar Plaintiff's claims here.[33] The Court approved the *Wenske* Settlement via an order and final judgment ("Final Judgment") on July 13, 2020.[34]

The *Wenske* Settlement's terms are central to Defendants' Motion. Specifically, Defendants argue the *Wenske* Settlement's release of claims ("*Wenske* Release") bars Plaintiff's claims here.[35] Under the *Wenske* Release's terms,

> Blue Bell LP, and all the Blue Bell LP limited partners have fully, finally, and forever released . . . the Released Claims against the Released Persons and any and all claims arising out of, relating to, or in connection with, the defense, settlement or resolution of the Action against the Released Persons.[36]

The "Action" means "the action captioned Wenske v. Blue Bell Creameries, Inc., C.A. No. 2017-0699-JRS."[37] The "Released Persons" are "(i) each of the Individual Defendants; (ii) Blue Bell LP; (iii) Blue Bell GP; (iv) Blue Bell USA; and (v) each and all of their Related Persons."[38] The *Wenske* Settlement defines "Released Claims" as

---

[32] *See also* Transaction ID 65817765 (transcript of *Wenske* Settlement hearing).

[33] *See* Dkt. 331 ("Tr.") 69:3-70:20 (the Court raising, without objection, "that this was not brought to Vice Chancellor Slights' attention."). *See also* Transaction ID 65817765.

[34] *See* Final Judgment. *See also Brex*, 2024 WL 2956861, at *1. Under the *Wenske* Settlement's terms, BB USA received no monetary consideration. *See generally Wenske* Settlement; Final Judgment. Instead, BB USA *funded* the monetary recovery received by other parties to the *Wenske* Settlement. *See Wenske* Settlement at 23-28.

[35] *See generally* Dkt. 206 ("Opening Br.").

[36] *Id.* ¶ 7.

[37] *Wenske* Settlement § V.A.1.

[38] Final Judgment ¶ 9.

7

any and all claims . . . including but not limited to, claims for . . . breach of duty of care, breach of duty of loyalty, . . . breach of fiduciary duty, . . . breach of contract, [and] unjust enrichment, . . . whether fixed or contingent, accrued or unaccrued, liquidated or unliquidated, at law or in equity, matured or unmatured, including both known claims and any Unknown Claims that have been, or could have been asserted in the Action by Plaintiff, Blue Bell LP, or any Blue Bell LP limited partner, individually or derivatively on behalf of Blue Bell LP against any of the Released Persons that are based upon, arise out of, or are related to: the allegations, transactions, facts . . . alleged, involved, or set forth in the [*Wenske*] Amended Complaint through and including the date of the [*Wenske* Settlement] Stipulation[.][39]

The definition of "Released Claims" expressly provides that, "[n]otwithstanding the foregoing, . . . nothing in the Stipulation releases any claim by any of the Individual Defendants (A) for recovery of insurance proceeds or any other claim against any insurer under any policy of insurance or (B) for exculpation, indemnification, and/or advancement against Blue Bell LP, Blue Bell GP, Blue Bell USA or any of their affiliates[.]"[40] "Individual Defendants" does not include Blue Bell USA.

The *Wenske* Settlement does not define to term "releasor."[41] Nevertheless, Defendants maintain BB USA released any claim related to the Listeria outbreak such that Plaintiff's derivative claims must be dismissed.

## C. This Action

This case charted a different course than the *Wenske* Action. In September 2018, this Court dismissed the entirety of Plaintiff's Complaint for failure to plead

---

[39] *Id.* ¶ 8.

[40] *Id.*

[41] *See generally id.*; *Wenske* Settlement.

demand futility.[42] The Delaware Supreme Court reversed that decision, holding that the Complaint states a well-pled *Caremark* claim and alleges particularized facts creating a reasonable inference that demand was futile.[43] After our high court remanded for further proceedings, BB USA's Board appointed an independent special litigation committee ("SLC") to investigate Plaintiff's allegations in August 2019.[44] A month later, the parties filed a letter with the Court representing that they had agreed to stay this Action.[45] Yet, the Court never entered a stay and the parties never followed-up.[46] The SLC investigated the matter for five years.[47] In all that time, *no one* raised the *Wenske* Settlement as a possible defense to Plaintiff's claims.[48]

In September 2023, the Court realigned BB USA as Plaintiff in this Action at the SLC's request.[49] In April 2024, the Court granted the SLC's motion to return control of the action to Plaintiff.[50] As discovery progressed, the Court granted Defendants' request to file amended answers.[51] In February 2025, Defendants filed

---

[42] *See Marchand*, 2018 WL 4657159, at *11-19 (Del. Ch. Sept. 27, 2018).

[43] *See Marchand*, 212 A.3d at 807-09.

[44] *See* Dkt. 69.

[45] Dkt. 78.

[46] During this period, the case was reassigned to me due to Vice Chancellor Slights' retirement. *See* Dkt. 101.

[47] *See* Dkt 69; Tr. 34:16-35:9.

[48] *See* Tr. 37:10-38:1, 38:5-12 (noting that in their interrogatory response "Defendants stated they 'first identified the *Wenske* Settlement and Final Judgment as a potential defense or bar . . . in or around January 2025.'"), 44:21-45:23 ("the parties didn't do anything for five years while the Marchand SLC was doing it work.").

[49] *See* Dkt. 113.

[50] *See* Dkt. 121.

[51] *See* Dkt. 187.

their Amended Answers—which raised the *Wenske* Release affirmative defense central to the Motion for the first time.[52] Specifically, Defendants asserted BB LP and its limited partners, including BB USA, "provided a full complete release to Defendant[s]" that includes Plaintiff's derivative claims based on the Listeria outbreak.[53] Accordingly, Defendants filed the Motion in May 2025 seeking dismissal of all Plaintiffs' claims.[54]

The day before oral argument on the Motion, Plaintiff filed a Motion to Supplement her Complaint.[55] Plaintiff seeks to add three new breach of fiduciary duty claims related to the *Wenske* Settlement.[56] At bottom, Plaintiff's proposed additions allege that if the *Wenske* Release bars Plaintiff's Listeria-based claims, the members of BB USA's Board of Directors who approved the *Wenske* Settlement breached their fiduciary duties.[57]

The Court held oral argument concerning the Motion on October 8, 2025.[58] Oral argument illuminated several key points.[59] First, Defendants clarified that the Motion relies on both BB USA and BB LP's releases of claims in the *Wenske*

---

[52] *E.g.*, Dkt. 190.

[53] *E.g.*, *id.* at 82.

[54] *See* Dkt. 205.

[55] *See* Dkt. 324.

[56] *See id*, Ex. A ¶¶ 186-205.

[57] *See id.*

[58] *See generally* Tr.

[59] *See generally id.*

10

Settlement.[60] Second, all parties confirmed that no one raised the *Wenske* Settlement as a possible defense to this Action prior to Defendants filing their amended Answers.[61] Third, Plaintiff and Defendants each acknowledged that accepting either of their respective interpretations of the *Wenske* Settlement and Final Judgment could create internal, textual inconsistency.[62] Fourth, Defendants represented that the *Wenske* Settlement was intended to be a "general release."[63] Finally, Defendants pointed out that the SLC "never [voiced] what their position is" concerning the Motion's release argument.[64]

---

[60] *See id.* 5:3-24:3 ("[I]t is important to note that what we refer to as the release are really two separate releases."). Specifically, Defendants contend that BB USA's release of claims related to the Listeria outbreak in the *Wenske* Settlement precludes Plaintiff's derivative claims on BB USA's behalf in this action. *See* Dkt. 279 ("Reply Br.) at 7-17. Alternatively, Defendants argue BB LP's release independently bars Plaintiff's clams, because all the alleged harm occurred at the BB LP level. *See* Tr. 5:3-24:3. Defendants also asserted at oral argument that even if neither release applies, Plaintiff's claims are still barred by the rule against double recovery. *See id.* 24:19-30:1 (citing *Wood v. U.S. Bank Nat. Ass'n*, 2018 WL 4643801, at *1-3 (Del. Ch. Sept. 26, 2018), *interlocutory appeal denied*, 196 A.3d 1253 (Del. 2018). Yet, Defendants also conceded that addressing the double recovery argument "requires factual resolution, which would seem to preclude judgment on the pleadings." Tr. 67:17-68:4; *see Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, L.P.*, 624 A.2d 1199, 1206 (Del. 1993) ("a motion for judgment on the pleadings cannot be granted when a material question of fact exists.").

[61] *See* Tr. 37:10-38:1, 38:5-12, 69:3-71:7.

[62] *See id.* 57:12-62:18, 76:21-82:7. If that is the case, well-settled principles of Delaware law suggest granting judgment on the pleadings is inappropriate. *See, e.g.*, *Village*, 342 A.3d at 313 ("Judgment on the pleadings is improper when contractual provisions have multiple reasonable interpretations because at the pleadings stage . . . the Court cannot choose between two different reasonable interpretations[.]" (internal quotes omitted)).

[63] Tr. 87:8-90:11.

[64] *See id.* 82:8-83:4.

11

## II. STANDARD OF REVIEW

Courts grant a motion for judgment on the pleadings "only when no material issue of fact exists and the movant is entitled to judgment as a matter of law."[65] When considering such a motion, "the Court will take the well-pleaded facts contained in the operative pleadings and view the facts pleaded and inferences to be drawn from such facts in a light most favorable to the non-moving party."[66] The pleadings the Court may consider "are not limited to complaints or counterclaims, but also include answers and affirmative defenses."[67] Although a motion for judgment on the pleadings can be "a proper framework for enforcing unambiguous contracts,"[68] the Court will not grant such a motion if the nonmovant's interpretation is reasonable.[69] Critically, when "the court finds non-frivolous bases for [a nonmovant's] affirmative

---

[65] *Desert Equities*, 624 A.2d at 1205.

[66] *Jimenez v. Palacios*, 250 A.3d 814, 827 (Del. Ch. 2019) (cleaned up). The Court may also consider documents "integral to a plaintiff's claims and incorporated into the complaint" by reference. *Windsor I, LLC v. CWCapital Asset Mgmt. LLC*, 238 A.3d 863, 873 (Del. 2020). A document "is integral to [a] claim if it is the 'source for the . . . facts as pled in the complaint.'" *In re Gardner Denver, Inc.*, 2014 WL 715705, at *3 (Del. Ch. Feb. 21, 2014) (quoting *Orman v. Cullman*, 794 A.2d 5, 16 (Del. Ch. 2002)).

[67] *Id.* (citations omitted). *See also Menna v. Weidhaas*, 2023 WL 4851547, at *7 (Del. Ch. July 28, 2023) ("When a pleading-stage dispositive motion relies upon affirmative defenses, *such as waiver and release*, the Court may dismiss a claim if the plaintiff includes in its pleadings facts that *incontrovertibly* constitute an affirmative defense to a claim." (emphasis added) (internal quotes omitted)).

[68] *Standard Gen. L.P. v. Charney*, 2017 WL 6498063, at *10 (Del. Ch. Dec. 19, 2017).

[69] *See Village Practice*, 342 A.3d at 313.

defense which, if proven, could entitle [nonmovant] to relief from its [at-issue] contractual obligations," judgment on the pleadings is improper.[70]

## III.  ANALYSIS

The atypical facts discussed above make resolving several of the parties' arguments concerning the Motion difficult.  The Motion argues the *Wenske* Settlement released Plaintiff's claims here.[71]  Yet, Defendants represented that when the Court approved the *Wenske* Settlement no one intended to release this action or understood that to be the *Wenske* Release's effect.[72]  Defendants' position in that regard comports with the parties' contemporaneous actions—namely that: (1) the parties continued litigating this case for *over five years* without raising the release;[73] (2) BB USA stockholders did not receive the *Wenske* Settlement notice, which did not discuss this action;[74] and (3) no one brought the supposed release of this case to Vice

---

[70] *L-5 Healthcare Partners, LLC v. Alphatec Holdings, Inc.*, 2020 WL 6021536, at *8 (Del. Ch. Oct. 12, 2020).  For a party to stave-off judgment on the pleadings, it must support its affirmative defenses "with more than just summary pleadings. The rhythmic incantation of multiple affirmative defenses . . . cannot, alone, defeat an otherwise well-supported motion for judgment on the pleadings." *GreenStar IH Rep, LLC v. Tutor Perini Corporation*, 2017 WL 5035567, at *8 (Del. Ch. Oct. 31, 2017).

[71] *See generally* Opening Br.; Reply Br.

[72] *See* Tr. 37:10-38:1, 38:5-12 (discussing Defendants' interrogatory responses to that effect).

[73] Had Defendants truly intended to secure a global release that included a release of this Action, one would expect them to have sought dismissal of this Action as soon as the Court approved the *Wenske* Settlement.  This is especially so given that the individual defendants in each action were identical.

[74] It seems reasonable to think the settling parties in *Wenske* would, at a minimum, have included reference to the compromise of this action in the notice—and even sent that notice to BB USA stockholders—to avoid a possible collateral attack down the line, if they truly intended to the release to reach this action.

Chancellor Slight's attention during the *Wenske* Settlement approval process.[75]

Nevertheless, Defendants insist the Wenske Settlement's plain text releases Plaintiff's claims.[76]

The parties advance competing interpretations of the *Wenske* Settlement and Release. Plaintiff argues BB USA is not a "releasor" of claims under the *Wenske* Settlement because "BB USA entered into the settlement to extinguish claims *it was defending against* and not as a BB LP limited partner."[77] Plaintiff points out that the *Wenske* Settlement defines the "Released Claims" with reference to the *Wenske* Action alone.[78] Critically, Plaintiff argues the inclusion of claims that "could have

---

[75] *See* Tr. 69:3-70:9 (asking whether, if Defendants' argument were to prevail here, this might in turn raise questions about candor to the tribunal in connection with the *Wenske* Settlement proceeding).

[76] *See* Opening Br. at 14-29; Reply Br. 5-17. Defendants' argument basically amounts to a suggestion that, regardless of anyone's intentions as to contractual meaning at the time, the plain meaning of the words on the page now compel the release and bar of the claims in this Action. Defendants do not dispute the extraordinary sophistication of their counsel in negotiating—and contemporaneously understanding—the text of the *Wenske* Settlement. Their argument instead has more of a kaleidoscopic feel, as though someone five years after the fact happened to pick up the viewing tube and give one last twist that by chance revealed the new picture Defendants now present. It is frankly hard not to find this line of argument discomfiting. But that does not necessarily justify departing from the *Wenske* Release's plain text. *Salama v. Simon*, 328 A.3d 356, 366 (De. Ch. Nov. 27, 2024) ("If a contract is unambiguous, 'the Court must give effect to [its] clear language.'" (quoting *Kaiser Aluminum Corp. Matheson*, 681 A.2d 392, 395 (Del. 1996) (edits in original))). *See also See Nemec v. Shrader*, 991 A.2d 1120, 1126 (Del. 2010) ("Parties have a right to enter into both good and bad contracts, the law enforces both.").

[77] Dkt 260 ("Opp'n Br.") at 29-30. Plaintiff points out that BB USA is defined as a "Defendant" in the *Wenske* Settlement and "is specifically excluded from the definition of 'Designated Limited Partners.'" *Id.* at 30 (quoting Wenske Settlement § V.A.1). Similarly, Plaintiff notes that the *Wenske* Settlement defines BB LP, BB GP, and BB USA, but not Wenske or the BB LP limited partners, as "Released Person[s]." *See id.* at 30-31; Wenske Settlement § V.A.29.

[78] *See* Wenske Settlement §§ V.A.29, V.B.2; Opp'n Br. at 31-33. Plaintiff asserts the inclusion of claims that "'could have been asserted in the [*Wenske*] Action by Plaintiff,'" in the "'Released Claims'" definition is of no moment, because "as a BB LP unitholder and not a BB

14

been asserted in the [*Wenske*] Action by . . . any [BB LP] limited partner" in the "Released Claims" definition[79] does not cover BB USA, because other provisions of the *Wenske* Settlement reference "Defendants," including BB USA,[80] and the BB LP limited partners separately.[81] Thus, Plaintiff insists the *Wenske* Settlement did not release the claims asserted derivatively on behalf of BB USA in this Action.[82]

Defendants take the opposite position, arguing BB USA released any claims it had related to the Listeria outbreak in the *Wenske* Settlement.[83] Defendants maintain that the inclusion of "any [BB LP] limited partner" in the *Wenske* Release shows BB USA is a "releasor of claims."[84] Defendants assert that interpretation does not create any internal inconsistency, because "the terms 'Defendants and BB LP

---

USA stockholder, Mrs. Wenske had no standing or authority to assert or litigate, much less resolve, claims on behalf of BB USA for breaches of fiduciary duties and damages to BB USA and its stockholders caused by the Individual Defendants." Opp'n Br. at 31-33 (quoting § V.A.29 (edits in original)).

[79] Wenske Settlement § V.A.29.

[80] *Id.* § V.A.1

[81] Opp'n Br. at 33 (citing Wenske Settlement § V.F.1; *Hill v. LW Buyer, LLC*, 2019 WL 3492165, at *7 n.70 (Del. Ch. July 31, 2019) ("A contract should be read to give effect to all the provisions of the contract and not render one provision superfluous or redundant."). Thus, Plaintiff maintains it is irrelevant that the *Wenske* Settlement's definition of "Non-released Person and Entities" excludes BB USA, because "BB USA was not a 'releasor' of [] claims . . . [and] the scope of the *Wenske* Action . . . was inherently and legally limited to claims for breaches of duty owed to BB LP alone[.]" *Id.* at 34.

[82] *Id.* 29-37. As part of that argument, Plaintiff reject's Defendants' assertion that the *Wenske* Release constitutes a global release. *See id.* at 33-34.

[83] *See* Opening Br. at 20-27; Reply Br. at 7-17. As discussed, Defendants also argue the BB LP release in the *Wenske* Settlement bars Plaintiff's claims but concede that position relies on factual determinations unsuited for resolution at the pleading stage. *See supra* n.60.

[84] Reply Br. at 8-10.

15

'limited partners' are not mutually exclusive."[85] Defendants argue the *Wenske* Release "is not limited to derivative claims on behalf of BB LP" and includes Plaintiff's claims here – which arise out of the same facts underlying the *Wenske* Action.[86] Thus, Defendants maintain the *Wenske* Release's "clear and unambiguous" language bars Plaintiff's claims.[87]

Reviewing the *Wenske* Settlement and Release shows Defendants' have a compelling textual basis for their Motion. The *Wenske* Settlement releases "any and all claims . . . [that] could have been asserted in the [*Wenske*] Action by . . . *any* [BB LP] limited partner, individually or derivatively on behalf of BB LP . . . [that] are related to" the Listeria outbreak.[88] As owner of over 69 percent of BB LP's partnership units, BB USA is clearly a BB LP limited partner.[89] Plaintiff's response—that including BB USA creates internal textual inconsistency—is not convincing given that "any [BB LP] limited partner" and "Defendants" are not mutually exclusive.

---

[85] *Id.* at 8. Similarly, Defendants argue that "Plaintiff's admission that BB USA is expressly excluded from being a 'Designated Limited Partner' confirms that BB USA is a 'releasor,'" because "[t]he defined term 'Designated Limited Partners' consists of a subset of 'Blue Bell LP limited partners.'" *Id.* at 8-9. Defendants also maintain the carve-out of indemnification claims from the *Wenske* Release shows "all BB LP limited partners are 'releasors.'" *Id.* at 9-10 (citing Wenske Settlement ¶ 55).

[86] *Id.* at 10-14.

[87] *See id.* at 7-17.

[88] Final Judgment ¶ 8 (emphasis added).

[89] Compl. ¶ 8. Indeed, at bottom, Plaintiff asks the Court to read the phrase "any [BB LP] limited partners" as not including BB USA despite its ownership of most of the BB LP partnership units.

Defendants' interpretation is also consistent—or at least not inconsistent—with the *Wenske* Action Plaintiff's contemporaneous view of this Action as an indemnification action for BB USA's benefit. If all BB LP limited partners are releasors, the plain text of the *Wenske* Release would act to bar indemnification claims by Defendants, absent a carve-out, given their status as BB LP limited partners signing the settlement papers.[90] It makes sense, then, that the *Wenske* Settlement includes just such a carve-out. In particular, the *Wenske* Release includes an express carve-out for certain indemnification claims, but quite notably limits the carve-out to the "Individual Defendants."[91] In other words, the carve-out does not extend to BB USA. That the carve-out was drafted not to include BB USA, despite the *Wenske* Action Plaintiff's contemporaneous description of this case as what amounts to an indemnification action for the benefit of BB USA, lends further textual support Defendants' plain text reading of the release. Thus, the *Wenske* Release's text suggests Defendants interpretation of the *Wenske* Settlement as releasing this action could be correct from a textual perspective. Yet, that does not end the analysis.

Even if Defendants' interpretation of the *Wenske* Release is correct, the question remains whether the *Wenske* Settlement could validly release Plaintiff's claims here. Broadly speaking, the answer is yes. Defendants cite *Feuer v. Dauman* for the well-settled proposition that, because "'Delaware courts recognize the validity

---

[90] Wenske Settlement ¶ 28; *see* Dkt. 75 at 5 (Wenske Plaintiff arguing "the only [] damages that Marchand could recover on BB USA's behalf from BB USA's directors and officers are indemnification damages resulting from the *Wenske* Plaintiffs' claims against BB USA in the *Wenske* Action.").

[91] Final Judgment ¶ 9.

of general releases,'" a company can execute a release in one case that bars fiduciary duty claims asserted in a later, related derivative action.[92] The decision recognized that directors' decision to execute a global release on behalf of the corporation exculpating themselves from liability in a possible related derivative action could be a "self-interested transaction[.]"[93] Nevertheless, Chancellor Bouchard reaffirmed that the Court will enforce such a release's plain terms unless the "facts concerning the circumstances under which it was entered . . . [cause] the Court [to] second-guess its enforceability."[94]

Here, the facts concerning the *Wenske* Settlement's negotiation and approval give the Court reason to question whether BB USA's alleged release of derivative claims would be valid as a matter of law. When the parties negotiated the *Wenske* Settlement, the BB USA SLC already had full authority to control the prosecution and disposition of this action.[95] Thus, the decision of whether to settle this action "plainly fell within the SLC's authority."[96] Yet, the BB USA SLC did not participate

---

[92] 2017 WL 4817427, at *4-5 (Del. Ch. Oct. 25, 2017) (quoting *Deuley v. DynCorp. Int'l, Inc.*, 8 A.3d 1156, 1163 (Del. 2010)).

[93] *Id.* at *4.

[94] *Id.*; *see also id. at* *5 (suggesting that, if the release was enforceable, then claims that the director defendants "breached their fiduciary duties by approving the [s]ettlement [a]greement" as a self-interested transaction might be available); Dkt. 324, Ex. 1 (Plaintiff's motion to supplement the complaint by adding claims alleging that, if Defendants' release argument is correct, the members of BB USA's Board of Directors who approved the *Wenske* Settlement breached their fiduciary duties).

[95] *See* Dkt. 69. As discussed, the members of BB USA's Board of Directors who established the SLC were individual defendants in both this case and the *Wenske* Action. The existence of the BB USA SLC at the time of the *Wenske* Settlement is a factor that differentiates this case from *Feuer*, which concerned a derivative action that was not in the hands of a special litigation committee when the prior-filed action that led to the at-issue release settled.

[96] *Harris v. Harris,* 2023 WL 193078, at *13 (Jan. 6, 2023).

18

in negotiations concerning the *Wenske* Settlement or agree to its terms.[97]  The SLC's

non-participation suggests it is at least reasonably conceivable that the directors who

executed the *Wenske* Settlement on BB USA's behalf releasing claims in the *Wenske*

Action lacked authority to release Plaintiff's claims here.[98]

Further, this action was a separate derivative claim, brought on behalf of a

different nominal defendant, pending before this Court at the time of the *Wenske*

Settlement.  Under Rule 23.1, the Court must expressly approve the settlement and

release of derivative claims.[99]  The Rule 23.1 approval process ensures a proposed

derivative settlement and release is "fair, reasonable, adequate, and in the best

interest of the [releasing company] [] and its stockholders."[100]  Case law holds that

the Court will not enforce a derivative settlement, or the release therein, absent Rule

23.1 approval.[101]

Here, *Wenske* Settlement parties did not raise the possible release of this action

at the settlement hearing.  Thus, Vice Chancellor Slights did not consider whether

---

[97] *See* Tr. 34:7-36:5, 46:1-8.  Instead, the SLC was active investigating the claims in this Action during the *Wenske* Settlement proceedings (*see* Dkt. 92), spent the next three years after the *Wenske* Settlement investigating the claims in this Action, realigned BB USA as the plaintiff in this action, and then eventually transferred authority to prosecute the Action back to Plaintiff.

[98] *See Zapata Corp. v. Maldonado*, 430 A.2d 779, 785-88 (Del. 1981); *Blue v. Tilray Brands, Inc.*, 2025 WL 519848, *2, *8 (Del. Ch. Feb. 17, 2025).

[99] Ch. Ct. R. 23.1.

[100] *In re Activision Blizzard, Inc. Stockholder Litigation*, 2015 WL 2415559, at *1-2 (Del. Ch. May 20, 2015).

[101] *See, e.g.*, *Off v. Ross*, 2008 WL 5053448, at *8 (Del. Ch. Nov. 26, 2008) ("Because any settlement or compromise of a class or derivative action requires court approval under Rule 23.1 [] [], Defendants' ability to obtain a release of the claims against them depend on receipt of such approval.").

the *Wenske* Settlement was fair and reasonable from BB USA's perspective.[102]  That the Court did not approve the *Wenske* Settlement as fair and reasonable to BB USA suggests the *Wenske* Release cannot bar Plaintiff's claims as a matter of law.[103]

Even if Vice Chancellor Slights had undertaken that analysis, it seems at a minimum questionable that he would have approved the *Wenske* Settlement as fair to BB USA.  Specifically, BB USA's "get" – the release of a "difficult to plead and prove" alter ego claim[104] – does not seem proportional to its "give" – a $15 million cash payment, cancelling $45 million in debt, and the broad *Wenske* Release.[105]  That further bolsters the Court's conclusion that it is at least reasonably conceivable that the *Wenske* Settlement cannot be interpreted as releasing Plaintiff's claims as a matter of law.  That compels denying Defendants' Motion.  But even if the *Wenske* Settlement satisfied Rule 23.1 concerning BB USA, judgment on the pleadings would still be improper because it is reasonably conceivable that the acquiescence doctrine applies here and indeed may present a prototypical example of its application.[106]

---

[102] *See* Transaction ID 65817765 32:23-45:14.

[103] *See, e.g.*, *Off*, 2008 WL 5053448, at *8.

[104] *Id.* 39:16-24.

[105] *See Wenske* Settlement at 23-28; *In re Trulia, Inc. Stockholder Litigation*, 129 A.3d 884, 890-91 (Del. Ch. 2016) (holding "the court evaluates . . . the reasonableness of the 'give' and the 'get'" when determining whether to approve a derivative settlement).  Indeed, if Defendants' reading is correct, BB USA would have released arguably valuable indemnification claims in exchange for zero monetary compensation, while paying substantial sums for the privilege of doing so. *See Wenske* Settlement at 23-28.

[106] *See Lehman Brothers Holdings Inc. v. Spanish Broadcasting System, Inc.*, 2014 WL 718430, at *7 (Del. Ch. Feb. 25, 2014), *aff'd*, 105 A.3d 989 (Del. 2014) ("Because I find that the Plaintiffs' claims for relief are barred by the doctrine of acquiescence, I need not address the substantive arguments the parties have raised regarding the interpretation of the contractual provision in dispute[.]").

The acquiescence doctrine is a type of estoppel, akin to "estoppel by silence."[107] This court has recognized that estoppel can bar a party from asserting a particular affirmative defense.[108] The acquiescence doctrine is rooted in the principle that "inaction or silence . . . can bar a [party] from relief both equitable and legal."[109] A party acquiesces when, with knowledge of a right and the material facts, it "(1) remains inactive for a considerable time; [] (2) freely does what amounts to recognition of the complained of act; or (3) acts in a manner inconsistent with the subsequent repudiation, which leads the other party to believe the act has been approved."[110] Restated, "where a plaintiff has remained silent with knowledge of her rights, and the defendant has knowledge of the plaintiff's silence and relies on that

---

[107] *Id.* at *9 & n.54. Although acquiescence is an equitable doctrine, it is available as a defense to legal claims, such as breach of contract. *See XRI Investment Holdings LLC v. Holifield*, 283 A.3d 581, 628-41 (Del. Ch. 2022), *aff'd in part, rev'd in part on other grounds*, *Holifield v. XRI Investment Holdings LLC*, 304 A.3d 896 (Del. 2023).

[108] *E.g.*, *Heckman v. Nero*, 1999 WL 182570, at *3 (Del. Ch. Mar. 26, 1999). Of course, "[t]he existence of a contractual bar to suit, such as a release . . . is an affirmative defense[.]" *New Enterprise Associates 14, L.P. v. Rich*, 295 A.3d 520, 535 (Del. Ch. 2023). Although the Court has not had occasion to consider whether the acquiescence doctrine can bar an affirmative defense of release, considering the nature of a release shows the answer is yes. This Court has repeatedly recognized that "a release is a contract like any other." *E.g.*, *Namdar v. Fried*, 340 A.3d 1184, 1209 (Del. Ch. 2025) (citing *Carlyle Inv. Mgmt. L.L.C. v. Moonmouth Co. S.A.*, 2015 WL 5278913, at *15 (Del. Ch. Sept. 10, 2015)). Anyone may forego a beneficial contractual right. *See In re Coinmint, LLC*, 261 A.3d 867, 892 (Del. Ch. 2021). Acquiescence is one doctrine by which the Court evaluates whether a party has relinquished a contractual right. *See, e.g.*, *In re PNC Delaware v. Berg*, 1997 WL 720705, at *4 (Del. Super. Oct. 22, 1997) ("[H]owever one characterizes the behavior of the [claimant], whether it be in terms of waiver, acquiescence, estoppel, abandonment, or novation, the evidence is overwhelming that the [claimant] forewent its claim on the contractual rights[.]"). Thus, the Court can apply the acquiescence doctrine to find a party is precluded from asserting a release-based affirmative defense.

[109] *Lehman Brothers*, 2014 WL 718430, at *9; *see In re Coinmint*, 261 A.3d at 892.

[110] *Klaassen v. Allegro Def. Corp.*, 106 A.3d 1035, 1047 (Del. 2014) (internal quotes omitted).

21

silence to the defendant's detriment, the plaintiff will be estopped from seeking protection of those rights."[111]

As with any equitable defense, the party asserting acquiescence must prove the defense by a preponderance of the evidence.[112] Critically, determining whether acquiesce applies "is fact intensive, often depending [] [] on an evaluation of the knowledge . . . of the acquiescing party."[113]

The acquiescence doctrine focuses on the party that has a right to object to action or inaction and fails to do so.[114] A party failing to assert a contractual right in response to a breach need not have a "conscious intent" to relinquish its right or suffer "a change of position or resulting prejudice."[115] But, equity demands the claimant "knowingly fail[] to act" before a court applies acquiescence.[116] Delaware caselaw is unclear regarding the knowledge required to find acquiescence.[117] Notably, the Delaware Supreme Court has endorsed the proposition that constructive knowledge supports applying the acquiescence doctrine.[118] Accordingly, this Court has enforced

---

[111] *Lehman Brothers*, 2014 WL 718430, at *7.

[112] *Walker v. FRP Investors GP, LLC*, 336 A.3d 542, 568 (Del. Ch. Apr. 15, 2025).

[113] *Julin v. Julin*, 787 A.2d 82, 84 (Del. 2001).

[114] *See, e.g.*, *Brevan Howard Credit Catalyst Master Fund Limited v. Spanish Broadcasting System, Inc.*, 2015 WL 2400712, at *2 (Del. Ch. May 19, 2015) ("Acquiescence is a doctrine focused on the *Defendant* and *its* understanding that complained-of acts were acquiesced in[.]"); *Fotta v. Morgan*, 2016 WL 775032, at *8 (Del. Ch. Feb. 29, 2016) (same).

[115] *Klaassen*, 106 A.3d at 1047.

[116] *State v. Sweetwater Point, LLC*, 2022 WL 2349659, at *6 (Del. Ch. June 30, 2022).

[117] *Lehman Brothers*, 2014 WL 718430, at *10 ("Our caselaw is inconsistent regarding the quality of knowledge required for a finding of acquiescence.").

[118] *Id.* (citing *Cornerstone Brands, Inc. v. O'Steen,* 2006 WL 2788414, at *3 n.12 (Del. Ch. Sept. 20, 2006) (holding "knowledge, actual *or constructive,* of the real facts and the other party's

22

the acquiescence doctrine where a claimant had access to "all information necessary for [an] [] assessment of [its] rights . . . and where the crucial fact . . . is uniquely within the interest of the [claimant]."[119] Similarly, acquiescence applies when a contractual right holder repeatedly participated in the allegedly breaching action.[120]

Under that standard, it is, at a minimum, reasonably conceivable that acquiescence applies such that granting the Motion would be improper.[121] Defendants remained silent for over five years after executing the *Wenske* Settlement, never raising the *Wenske* Release as a possible defense to Plaintiff's claims until they filed their Amended Answers.[122] After the BB USA SLC concluded its investigation and returned the case to Plaintiff, Defendants' silence continued. Assuming Defendants' are correct, they actively participated in conduct inconsistent with their interpretation of the *Wenske* Release by continuing to litigate this case despite what they now argue is "the unambiguous release language contained in both the [*Wenske*] [S]ettlement [] and this Court's final judgment."[123] Defendants' silence and

---

[119] lack of knowledge and the means of discovering the truth" is sufficient to prove "equitable estoppel.")).

[119] *Id.* at *10-11; *see In re Coinmint*, 261 A.3d at 896.

[120] *Julin*, 787 A.2d at 84 ("Wife's acceptance of the revised payment arrangement for more than five years constituted acquiescence and she was thereby estopped from asserting a right to additional payments.").

[121] *See, e.g.*, *In re Ebix, Inc. Stockholder Litigation*, 2014 WL 3696655, at *9-10 (Del. Ch. July 24, 2014) (holding the Court will not grant a pleading stage motion where it is reasonably conceivable that an affirmative defense applies); *Intermec IP Corp. v. TransCore, LP*, 2021 WL 3620435, at *21-24 (Del. Super. Aug. 16, 2021).

[122] *See* Tr. 37:10-38:1, 38:5-12, 44:21-45:23, 69:3-71:7; Dkt. 190 at 82.

[123] Opening Br. at 1-2. *See also* Final Judgment ¶ 7 (enjoining releasors from prosecuting "the Released Claims against the Released Persons[.]").

participation caused Plaintiff and BB USA a detriment – namely, the continued expenditure of time and resources to litigate this allegedly released Action. These undisputed facts suggest this case may present a textbook example of the acquiescence doctrine.

Defendants' assertion that they did not have knowledge of the *Wenske* Settlement's release of this Action falls flat. As discussed, it is difficult to wrap one's mind around the notion that Defendants and their sophisticated counsel—in the same court before the same judge—continued to litigate this Action *for years* somehow unaware that they already had an absolute defense.[124]

But even if the Court accepts Defendants' profession of actual ignorance, the acquiescence doctrine still compels denying the Motion because it is, at a minimum, reasonably conceivable that Defendants' had constructive knowledge of the alleged release under *Lehman Brothers*.[125] Defendants, as signatories, unquestionably had access to the *Wenske* Settlement which contains the at-issue release.[126] It is well-settled that "a party who enters into a contract governed by Delaware law will be charged with knowledge of the contents of the instrument and will be deemed to have knowingly agreed to the plain terms of the instrument[.]"[127] Moreover, as the parties

---

[124] *See Malcom v. Sears*, 1990 WL 9500, at \*2 (Del. Super. Jan. 26, 1990) ("The execution of a general release by which a party is released from any claims which may arise on account of an accident, is an absolute bar to that party bringing an action based upon the accident." (citing *Adams v. Jankouskas*, 452 A.2d 148, 156 (Del. 1982))).

[125] *See Lehman Brothers*, 2014 WL 718430, at \*10-11.

[126] Wenske Settlement at 39-40.

[127] *E.g.*, *Chapter 7 Tr. Constantio Flores v. Strauss Water Ltd.*, 2016 WL 5243950, at \*6 (Del. Ch. Sept. 22, 2016). *See also* Restatement (Second) of Contracts § 157 cmt. b (1981)

24

facing potential liability, it was "uniquely within the interest of" Defendants to know they had already secured a release covering Plaintiff's claims.[128]

Of course, the extent of Defendants' knowledge, constructive or otherwise, is a factual issue.[129] Thus, the Court does not affirmatively hold that the acquiescence doctrine applies and precludes Defendants from arguing the *Wenske* Settlement released Plaintiff's claims. Instead, it is sufficient to conclude that for purposes of this pleading-stage motion, under the unique circumstances described above, it is reasonably conceivable that Defendants knowingly acquiesced to this action proceeding notwithstanding the *Wenske* Release. This precludes entering judgment on the pleadings in Defendants' favor concerning the scope of the *Wenske* Release. Therefore, Defendants' Motion for Judgment on the Pleadings is denied.

## IV.    CONCLUSION

For the reasons discussed, Defendants' Motion for Judgment on the Pleadings is denied.

---

("Generally, one who assents to a writing is presumed to know its contents and cannot escape being bound by its terms . . . his assent is deemed to cover unknown as well as known terms."). Defendants concede "[t]he [Wenske] release is clear and unambiguous." *E.g.*, Reply Br. at 14.

[128] *Lehman Brothers*, 2014 WL 718430, at *10-11.

[129] *Julin*, 787 A.2d at 84.