# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| AMY THOMAS, on behalf of herself and all others similarly situated, | ) ) ) | C.A. No. K24C-12-009 RLG |
| Plaintiff, | ) ) ) | |
| DOVER FEDERAL CREDIT UNION, | ) ) ) | |
| Defendant. | ) ) ) | |

Submitted: November 19, 2025
Decided: February 27, 2026

## OPINION

*Upon Defendant's Motion to Dismiss – GRANTED*

Lisa M. La Fornara, Esquire (argued) (*PHV*), Cohen & Malad, LLP, Indianapolis, Indiana. J. Gerard Stranch, IV, Esquire (*PHV*), Stranch, Jennings & Garvey, PLLC, Nashville, Tennessee. Derrick B. Farrell, Esquire; Lesley E. Weaver, Esquire; Matthew L. Miller, Esquire; and Robert B. Lackey, Esquire, Bleichmar Fonti & Auld LLP, Wilmington, Delaware. *Attorneys for Plaintiff.*[1]

Scott R. Sinson (*PHV*), Esquire and Kevin A. Ameriks, Esquire (*PHV*), Gordon Rees Scully Mansukhani, Chicago, Illinois. Krista M. Reale, Esquire, Margolis Edelstein, Wilmington, Delaware. *Attorneys for Defendant.*

**GREEN-STREETT, J.**

---

[1] The listed attorneys at Bleichmar Fonti & Auld LLP represented Plaintiff at the time of the October 24, 2025 hearing. On February 18, 2026, while the Court's decision was still pending on Defendant's Motion to Dismiss, local counsel for Plaintiff was substituted. Plaintiff is now represented by Peter B. Andrews, Esquire and David M. Sborz of Andrews and Springer LLC. Ms. La Fornara and Mr. Stranch, formerly entered *pro hac vice,* remain. See D.I. 36 (Feb. 18, 2026).

1

## I.  Introduction

A member of a credit union attempted to make a payment to a merchant without sufficient funds in her account to cover the transaction.  The credit union rejected the transaction and charged the member a fee for insufficient funds.  The merchant resubmitted the transaction and the credit union rejected the transaction a second time, resulting in another fee for insufficient funds.  The member brought the instant litigation, alleging the second fee breached her membership agreement with the credit union.  As the second fee did not breach the membership agreement, the credit union's Motion to Dismiss is **GRANTED**.

## II.  Factual and Procedural Background

### A.  The underlying transaction

In 2024, Plaintiff Amy Thomas maintained a checking account as a member of Defendant Dover Federal Credit Union ("Dover").[2]  On October 4, 2024, Ms. Thomas attempted to make a payment from that checking account for $1,272.00.[3]  Dover rejected that payment because of insufficient funds in Ms. Thomas's checking account, and charged her a $30.00 fee.[4]  On October 9, 2024, the merchant resubmitted the payment request, and Dover attempted to process the payment a

---

[2] Compl. at 11.

[3] Id.

[4] Id.

second time.[5]  Dover rejected the transaction again for insufficient funds, and charged Ms. Thomas a second $30.00 fee for insufficient funds.[6]  In total, Dover charged Ms. Thomas $60.00 in fees for the failed transactions.[7]

## B. The instant litigation and the membership agreements

Ms. Thomas filed her Complaint on December 6, 2024, alleging breach of contract; breach of the duty of good faith and fair dealing; unjust enrichment; and a violation of the Delaware Uniform Deceptive Trade Practices Act.[8]  Ms. Thomas raised these allegations individually, as well as by class action under Superior Court Civil Rule 23.[9]  In support of her allegations, Ms. Thomas attached a membership agreement issued by Dover dated 2016 (the "2016 Agreement")[10] and Dover's fee schedule that noted an effective date of September 1, 2024 (the "2024 Fee Schedule").[11]

---

[5] Id.

[6] Id.

[7] Id.

[8] Id. at 17-20.

[9] Id. at 13.

[10] Compl. Ex. A (the "2016 Agreement").

[11] Compl. Ex. B (the "2024 Fee Schedule").

3

The 2016 Agreement informs members, "[i]f a check, item[,] or transaction is presented without sufficient funds in your account to pay it, we may, at our discretion, pay the item (creating an overdraft) or return the item for insufficient funds (NSF)."[12]  The 2024 Fee Schedule identifies a fee for "ACH NSF per Item/Paid or Returned" totaling $30.00.[13]  The 2024 Fee Schedule also lists a fee for "NSF Bill Pay per item" of $30.00.[14]

On February 5, 2025, Dover filed the instant Motion to Dismiss under Superior Court Civil Rule 12(b)(6) for failure to state a claim and 12(b)(1) for lack of subject matter jurisdiction.[15]  In support of its Motion, Dover attached a different membership agreement dated 2019 (the "2019 Agreement")[16] and a different fee schedule effective May 7, 2021 (the "2021 Fee Schedule").[17]  Although the disparate fee schedules appear largely consistent, the two membership agreements (collectively, the "Membership Agreements") are materially different.  Critically, the

---

[12] The 2016 Agreement at 3.

[13] The 2024 Fee Schedule at 1.

[14] Id. at 5.

[15] Mot. to Dismiss at 1.

[16] Mot. to Dismiss Ex. A (the "2019 Agreement").

[17] Mot. to Dismiss Ex. B (the "2021 Fee Schedule").

2019 Agreement contains a paragraph after the heading "Nonsufficient funds (NSF fees)," outlining that:

> If an item drafted by you (such as a check) or a transaction you set up (such as a preauthorized transfer) is presented for payment in an amount that is more than the amount of money available in your account, and we decide not to pay the item or transaction, you agree that we can charge you an NSF fee for returning the payment. Be aware that such an item or payment may be presented multiple times and that we do not monitor or control the number of times a transaction is presented for payment. You agree that we may charge you an NSF fee each time a payment is presented if the amount of money available in your account is not sufficient to cover the payment, regardless of the number of times the payment is presented.[18]

Dover's Motion focused on the validity of Ms. Thomas's claims under the 2019 Agreement.

Ms. Thomas filed her Response to Dover's Motion to Dismiss on March 7, 2025. At that time, Ms. Thomas voluntarily dismissed her claim under the Delaware Uniform Deceptive Trade Practices Act.[19] Aside from disputing Dover's interpretation of the two agreements generally, Ms. Thomas also asserted, "Dover has not authenticated the effective dates of the purported contract documents it seeks

---

[18] The 2019 Agreement at 2.

[19] Resp. at 2 n.2.

to introduce."[20]  Accordingly, Ms. Thomas contended a factual dispute existed over which agreement should control the Court's analysis.[21]

Dover responded by providing an affidavit from its authorized agent, averring the 2019 Agreement took effect before Ms. Thomas's failed transaction and Dover's imposition of the two fees for insufficient funds (the "Affidavit").[22]  The parties each submitted supplemental filings providing additional decisional law from various jurisdictions in support of their respective positions.[23]  After a continuance permitting the parties to engage in settlement negotiations,[24] the Court held oral argument on October 24, 2025.[25]

## III.  **Standard of Review**

Under Superior Court Civil Rule 12(b)(6), this Court views the Complaint "in [a] light most favorable to the nonmoving party, accepting as true its well-pled allegations and drawing all reasonable inferences that logically flow from those

---

[20] Resp. at 4.

[21] Id. at 9-10.

[22] Def.'s Reply Ex. A.  See D.I. 11 (Mar. 18, 2025).

[23] Pl.'s Suppl. Filing, D.I. 29 (Oct. 16, 2025); Def.'s Suppl. Filing, D.I. 31 (Oct. 22, 2025).

[24] See D.I. 24 (Jun. 24, 2025).

[25] Tr. of Oral Arg., D.I. 34 (Nov. 19, 2025) (hereinafter, "Tr. at __").

allegations."[26]  The Court does not accept "conclusory allegations unsupported by specific facts," nor does it "draw unreasonable inferences in the plaintiff's favor."[27] This Court only grants a motion to dismiss under Rule 12(b)(6) when "the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible [to] proof."[28]  If, on a motion to dismiss under Rule 12(b)(6), extrinsic materials outside the pleadings are considered by the Court, "the motion shall be treated as one for summary judgment … and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."  Superior Court Civil Rule 12(b)(1) requires the Court to dismiss any claim where the Court lacks subject matter jurisdiction.[29]

## IV.     Analysis

### A.      Ms. Thomas's claims are not preempted by federal law

As a threshold matter, the Court finds it has subject matter jurisdiction over Ms. Thomas's claims and declines to dismiss the Complaint under Superior Court Civil Rule 12(b)(1).  Dover argues the Complaint seeks to challenge the language of

---

[26] Windsor I, LLC v. CWCapital Asset Management LLC, 238 A.3d 863, 871 (Del. 2020) (internal quotations omitted) (quoting Deuley v. DynCorp Int'l, Inc., 8 A.3d 1156, 1160 (Del. 2010)).

[27] Id. (internal quotations omitted).

[28] Id. (internal quotations omitted).

[29] See In re Proton Pump Inhibitors Products Liability Litigation, 2023 WL 5165406, at *5 (Del. Super. Aug. 11, 2023).

disclosures in the Membership Agreements.[30]  As federal regulations govern the required disclosures in an agreement between a credit union and its members,[31] Dover argues any claims rooted in a challenge to that language has been preempted by federal law.[32]

"Under the Supremacy Clause of the United States Constitution, federal law preempts contrary state law."[33] 12 C.F.R. § 707 regulates credit unions, demarcating that, "[s]tate law requirements that are inconsistent with the requirements of the TISA [(Truth in Savings Act)] and this part are preempted to the extent of the inconsistency."[34]  12 C.F.R. §707.4(b)(4) requires disclosure of "[t]he amount of any fee that may be imposed in connection with the account (or an explanation of how the fee will be determined) and the conditions under which the fee may be imposed." "[S]tate law claims regarding a federal credit union's failure to disclose certain fee practices or any perceived unfairness in the fee practices themselves are preempted."[35]

---

[30] Mot. to Dismiss at 19.

[31] See 12 C.F.R. § 707 *et seq.*

[32] Mot. to Dismiss at 19.

[33] Gonzalez v. State, 207 A.3d 147, 154 (Del. 2019) (internal quotations omitted) (quoting Hughes v. Talen Energy Marketing, LLC, 578 U.S. 150, 159 (2016)).

[34] 12 C.F.R. § 707.1(d).

[35] Lambert v. Navy Federal Credit Union, 2019 WL 3843064, at *2 (E.D. Va. Aug. 14, 2019).

"On the other hand, it is equally well established that true breach of contract and affirmative misrepresentation claims are not federally preempted."[36] Dover characterizes the Complaint as "actually challenging that Dover's fee practices are not adequately disclosed."[37] The Complaint, when read in its entirety, alleges that the Membership Agreements expressly prohibit a second fee for insufficient funds derived from the reprocessing of a previously failed transaction.[38] Disagreement over what the Membership Agreements permit and disclose are inherent to the dispute between the parties, but the Complaint asserts Dover violated the terms of the Membership Agreements. 12 C.F.R. § 707 does not permit federal credit unions to violate their contracts. It preempts Delaware law only to the extent that Delaware law would be "inconsistent with" 12 C.F.R. § 707's requirements.[39]

Dover correctly points out that any allegation that it failed to properly disclose fees, or any assertion of unfairness in the fee structure, would likely be preempted by 12 C.F.R. § 707. Requiring Dover to abide by the terms of the Membership Agreements, as the Complaint alleges Dover failed to do, does not contradict any

---

[36] Id.

[37] Mot. to Dismiss at 20.

[38] See Compl. at 10 ("These promises mean that Defendant may asses a "fee" (singular) of $30.00 per Item/Paid or Returned. In breach of these promises, Defendant assesses multiple $30.00 fees per item.").

[39] 12 C.F.R. § 707.1(d).

federal regulation. Accordingly, Ms. Thomas's claims are not preempted, and this Court has subject matter jurisdiction to consider them on their merits.

**B.    The Court will not consider the 2019 Membership Agreement at this stage of the Litigation[40]**

The Court must next determine under which of the Membership Agreements it must evaluate Dover's Motion to Dismiss. Dover attached the 2019 Agreement to its Motion and contends that the Court may consider that document as incorporated by reference in, and integral to, the Complaint.[41] In the alternative, Dover requests the Court convert Dover's Motion to one for Summary Judgment as permitted by Superior Court Civil Rule 12(b).[42]

Certainly, the Complaint relies heavily on the language contained in the 2016 Agreement. If the parties agreed that Ms. Thomas attached the 2016 Agreement in error, and the 2019 Agreement served as the operative contract at the time of the disputed fees, the Court could consider the 2019 Agreement as integral to the Complaint. In her Response, however, Ms. Thomas disputes the validity of the 2019 Agreement.[43]

---

[40] At oral argument, Dover conceded the fee schedule attached to the Complaint, the 2024 Fee Schedule, was the correct fee schedule. Tr. at 38.

[41] Mot. to Dismiss at 5.

[42] Tr. at 10.

[43] Resp. at 10.

Dover argues the Affidavit obviates the need for any discovery to resolve the dispute between the parties about which of the Membership Agreements controls.[44] The Court's consideration of the Affidavit, however, necessarily requires the Court to consider a document outside the pleadings. "When a trial court considers a document outside the complaint, the motion to dismiss usually is converted into one for summary judgment, which allows the parties to expand the record."[45]

Thus, the question becomes whether the Court should convert Dover's Motion to Dismiss into a Motion for Summary Judgment. Dover first requested the Court convert its Motion during oral argument.[46] Before oral argument, Ms. Thomas received no formal notice that the Motion to Dismiss might transform into a motion for summary judgment nor that Dover would make that request. Similarly, the Court gave no prior indication that it intended to convert Dover's Motion.

---

[44] Tr. at 10-11.

[45] Windsor, 238 A.3d at 875.

[46] Tr. at 11.

The Delaware Supreme Court addressed the conversion of a motion to dismiss into a motion for summary judgment in <u>Appriva Shareholder Litigation Co., LLC v. EV3, Inc.</u>[47] It held:

> Any *sua sponte* conversion by the trial judge should be "exercised with great caution and attention to the parties' procedural rights…" Before a motion to dismiss may be converted to one for summary judgment, parties must be given adequate notice and a reasonable opportunity to present pertinent material. Accordingly, and consistent with Rule 56(c), we hold that the Superior Court must give the parties at least ten days notice of its intent to convert a Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment.[48]

The record reflects that Ms. Thomas did not receive any formal notice before oral argument that the Motion to Dismiss would be converted to a motion for summary judgment.

The Court appreciates that Ms. Thomas *did* possess actual notice that Dover intended to rely on the 2019 Agreement as soon as Dover filed its Motion to Dismiss with the 2019 Agreement attached. Further, Ms. Thomas argued the validity of her claims under the 2019 Agreement – both at oral argument[49] and in her Response.[50]

---

[47] 937 A.2d 1275, 1288 (Del. 2007).

[48] <u>Id</u>.

[49] Tr. at 25.

[50] Resp. at 11.

12

Nevertheless, this Court remains bound by Delaware Supreme Court precedent, requiring that Ms. Thomas have at least ten days' notice of *the Court's* intent to convert the Motion to a motion for summary judgment. As Dover did not make that request until oral argument, the Court did not give any indication that it would entertain converting the Motion to Dismiss until oral argument. This Court finds Ms. Thomas received inadequate notice.

The Court will not convert Dover's Motion at this juncture, and will not consider the Affidavit. As the Court will not consider the Affidavit without affording Ms. Thomas the chance to rebut it, the Court cannot resolve the dispute over which membership agreement applies. At this time, the Court will not substitute the 2019 Agreement for the 2016 Agreement that Ms. Thomas attached to the Complaint.

On a motion to dismiss, the Court must accept well-pled factual allegations made by the plaintiff. Ms. Thomas alleges the 2016 Agreement controls. Accordingly, the Court will evaluate Dover's Motion to Dismiss under the language of the 2016 Agreement.

### C. Ms. Thomas's claim for breach of contract fails under the 2016 Agreement and 2024 Fee Schedule

Ms. Thomas alleges that Dover "breached the express terms of its own agreements."[51] As noted, *supra*, this claim does not assert that Dover failed to

---

[51] Compl. at 17.

disclose its ability to charge multiple fees per transaction. Instead, Ms. Thomas alleges the 2016 agreement forbids the charging of multiple fees for insufficient funds.

"To determine what contractual parties intended, Delaware courts start with the text."[52] "Delaware adheres to the 'objective' theory of contracts, i.e. a contract's construction should be that which would be understood by an objective, reasonable third party."[53] "A contract is ambiguous only when the provisions in controversy are reasonably or fairly susceptible [to] different interpretations or may have two or more different meanings."[54] "The contract must also be read as a whole, giving meaning to each term and avoiding an interpretation that would render any term 'mere surplusage.'"[55]

The 2016 agreement provides, "[i]f a check, item[,] or transaction is presented without sufficient funds in your account to pay it, we may, at our discretion, pay the item (creating an overdraft) or return the item for insufficient funds (NSF)."[56] The

[52] Sunline Commercial Carriers, Inc. v. CITGO Petroleum Corp., 206 A.3d 836, 846 (Del. 2019).

[53] NBC Universal v. Paxson Commc'ns Corp., 2005 WL 1038997, at *5 (Del. Ch. Apr. 29, 2005).

[54] Rhone-Poulenc Basic Chemicals Co. v. Am. Motorists Ins. Co., 616 A.2d 1192, 1196 (Del. 1992).

[55] Sunline Commercial Carriers, 206 A.3d at 846.

[56] The 2016 Agreement at 3.

14

2024 Fee Scheduled authorizes a $30.00 fee for "ACH NSF per item/Paid or Returned."[57]  Ms. Thomas posits this language expressly limits Dover to assessing a "singular" fee per item.[58]  She goes on to argue "[t]he same item on an account cannot conceivably become a new one each time it is rejected for payment then reprocessed especially when – as here – Plaintiff took no action to resubmit it."[59]

The Court finds an example provided in the 2016 Agreement instructive of the parties' intent.  To illustrate how a member could incur an insufficient funds fee because of a temporary hold on the member's account when the member opted into overdraft services for "everyday debit card transactions," the 2016 Agreement explains:

> You have $120 in your account.  You swipe your card at the card reader on a gasoline pump.  Since it is unclear what the final bill will be, the gas station's processing system immediately requests a hold on your account in a specified amount, for example, $80.  Our processing system authorizes a temporary hold on your account in the amount of $80, and the gas station's processing system authorizes you to begin pumping.  You fill your tank and the amount of gasoline you purchased is only $50.  Our processing system shows that you have $40 in your account available for other transactions… Later, another transaction is presented for payment from your account in the amount of $60 (this could be a check you have written, another debit card transaction, an ACH debit or any other

---

[57] The 2024 Fee Schedule at 1.

[58] Compl. at 10.

[59] Id.

15

kind of payment request). This other transaction is presented before the amount of the temporary hold is adjusted to the amount of your purchase… Because the amount of this other transaction is greater than the amount our processing system shows is available in your account, our payment of this transaction will result in an overdraft transaction. Because the transaction overdraws your account by $20, your account will be assessed the overdraft fee of $35 according to our policy…[60]

Though that example specifies what happens in the event of an overdraft, the preceding paragraph notes the same process applies if Dover declines to pay the item, resulting in the transaction failing for insufficient funds.[61] Another example provided in the 2016 Agreement, this time in relation to the payment order of "items," further clarifies the process initiated when a member attempts to use her account to pay for something:

If a check, item or transaction is presented without sufficient funds in your account to pay it we may, at our discretion, pay the item (creating an overdraft) or return the item for insufficient funds (NSF)… The amounts of the overdraft and NSF fees are disclosed elsewhere … We encourage you to make careful records and practice good account management. This will help you avoid creating **items** without sufficient funds and potentially incurring the resulting **fees**.[62]

---

[60] 2016 Agreement at 2.

[61] Id.

[62] Id. at 3 (emphasis added).

16

From these two examples, the process of incurring a fee for insufficient funds becomes clear. When a member authorizes a payment to draw from her account, that authorization creates an "item." In that context, the item equates to the transaction between the member and the merchant. The member agrees to pay the merchant money in exchange for goods or services. The merchant then presents that item to Dover to receive payment. After receiving the item, Dover determines if the member's account has sufficient funds to cover the item. If the account displays insufficient funds, Dover may reject the item and charge the member a $30 NSF fee, as outlined in the 2024 Fee Schedule.

Ms. Thomas and Dover agree that Dover may charge that fee the first time Dover rejects an item. The heart of Ms. Thomas's Complaint asserts no other fee may be charged in relation to that transaction.[63] She bases that argument on her contention that the 2016 Membership Agreement fails to explain the process by which an item gets presented to Dover.

At oral argument, while addressing the language of the 2019 Agreement, Ms. Thomas argued the Membership Agreements do not "clarify whether it's the merchant that's presenting or whether it's the customer who's presenting."[64] Ms.

---

[63] Compl. at 10.

[64] Tr. at 26.

17

Thomas further posited that "it's the customer's creation of the item that results in fees, not a third-party merchant's unilateral resubmission of the transaction."[65] As shown above, however, the 2016 Agreement unambiguously provides that an item gets presented after the member authorizes a transaction.[66]

Further, Ms. Thomas's argument relies on the belief that a merchant's decision to resubmit a payment after it fails lacks the requisite authorization of the member who initially authorized the payment. Essentially, Ms. Thomas posits the merchant enjoys one chance to submit the item to Dover for payment, and, if the payment fails, the merchant must seek out the member and obtain authorization to resubmit the item for payment. That argument misapprehends how financial transactions procedurally unfold and requires a departure from common sense.

In Ms. Thomas's version of the payment process, a member could use her debit card to purchase goods at a store, creating an item that the store then presents to Dover for payment. If the member has insufficient funds to cover the transaction, Dover could then reject the payment. The merchant would then be unable to receive payment for the goods with which the member walked out of the store – unless the member reauthorizes the payment. The member, however, already agreed with the

---

[65] Id.

[66] 2016 Agreement at 2.

merchant to pay for the goods. It would be illogical to require the merchant to ask for permission a second time to seek payment for goods for which the member already agreed to pay.

Accordingly, after the first item gets rejected, the merchant maintains the requisite authorization to create and present a new item to seek payment from Dover on the member's behalf. An item requires the merchant to provide something to the member for which the member wishes to pay, and the member to authorize payment from her account with Dover to the merchant. The fact that the first item failed because the member did not have sufficient funds to cover the transaction does not rescind the member's grant of authorization to the merchant to present the item to Dover for payment.

The belief that an item cannot be resubmitted as a new item for payment after failing for insufficient funds finds no support in the 2016 Agreement. Ms. Thomas cites no provision in the 2016 Agreement to support her contention to the contrary. When a merchant presents an item for payment, and the member does not have sufficient funds to pay the item, the 2016 Agreement expressly authorizes Dover to reject the item and charge the member a $30.00 fee. No terms in the 2016 Agreement prevent Dover from charging that fee each time it rejects an item, irrespective of whether Dover has already rejected an item for the same underlying transaction.

19

Thus, Dover did not breach the 2016 Agreement by charging Ms. Thomas a $30.00 fee for the rejected item on October 9, 2024.

### D. Dover did not breach its duty of good faith and fair dealing

Ms. Thomas next alleges Dover breached the implied covenant of good faith and fair dealing by charging the second $30.00 fee.[67] She bases that allegation on her assertion that the 2016 Agreement promises to charge only one fee per rejected item.[68] As explained above, the 2016 Agreement does not so promise.

"The implied covenant [of good faith and fair dealing] is inherent in all contracts and ensures that parties do not frustrate the fruits of the bargain by acting arbitrarily or unreasonably."[69] "The covenant also encompasses the principle of contract construction that if one party is given discretion in determining whether a condition in fact has occurred, that party must use good faith in making that determination."[70] "Courts utilize the implied covenant to infer contract terms to handle developments or contractual gaps that the asserting party pleads neither party

---

[67] Compl. at 18.

[68] Resp. at 23.

[69] Baldwin v. New Wood Res. LLC, 283 A.3d 1099, 1116 (Del. 2022) (internal quotations omitted) (quoting Dieckman v. Regency GP LP, 155 A.3d 358, 367 (Del. 2017)).

[70] Id. (internal quotations omitted) (quoting Wilmington Leasing, Inc. v. Parrish Leasing Co., L.P., 1996 WL 560190, at *2 (Del. Ch. Sept. 25, 1996)).

anticipated, and courts will invoke the implied covenant to imply terms when necessary to protect the reasonable expectations of the parties."[71]

Here, Ms. Thomas has not identified a contractual gap that the Court needs to fill. The 2016 Agreement permits Dover to charge a fee when it rejects an item for insufficient funds. The 2016 Agreement does not bar Dover from charging a fee when a merchant resubmits an item for payment tied to a transaction for which the merchant previously submitted an item.

Similarly, Ms. Thomas has not alleged facts that would support an allegation that Dover abused its discretion to assess fees when it rejects items for insufficient funds. Ms. Thomas has alleged Dover charged her two fees, separated by several days, totaling $60.00 based on one transaction made with a merchant that she did not have an adequate account balance to cover. That allegation does not rise to the level of breaching Dover's duty of good faith, nor does it frustrate the purpose of the 2016 Agreement. Thus, Ms. Thomas's claim for breach of good faith and fair dealing must be dismissed.

**E.    As the parties are bound by a contract, Ms. Thomas's unjust enrichment claim must be dismissed**

Ms. Thomas's final claim, pled in the alternative, asks the Court to find that Dover "knowingly received and retained wrongful benefits and funds from Plaintiff

---

[71] Id. (internal quotations omitted) (quoting Dieckman, 155 A.3d at 357).

and members of the Class."[72]  Ms. Thomas brings this claim "solely in the alternative to Plaintiff's breach of contract claim and applies only if the parties' contracts are deemed unconscionable or otherwise unenforceable for any reason."  The Court does not find the parties' contracts are unconscionable or otherwise unenforceable.  Accordingly, this claim must be dismissed.

## V.    Conclusion

The parties dispute which contract should apply, and the Court cannot resolve that dispute on a motion to dismiss.  The Court can, however, evaluate the Motion to Dismiss under the terms of the contract Ms. Thomas attached to the Complaint – the 2016 Agreement.  Dover's alleged conduct did not violate the unambiguous terms of the 2016 Agreement, nor did it violate its duty of good faith and fair dealing.  Ms. Thomas has not pled allegations that would permit recovery under the 2016 Agreement.  Dover's Motion to Dismiss is **GRANTED**.

**IT IS SO ORDERED.**

_____
Reneta L. Green-Streett, Judge

---

[72] Compl. at 19.

22